UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT JENNINGS, | § | |
|    Petitioner | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. M-09-CV-219 |
| | § | **DEATH PENALTY CASE** |
| RICK THALER, | § | |
| DIRECTOR, | § | |
| TEXAS DEPARTMENT | § | |
| OF CRIMINAL JUSTICE, | § | |
| CORRECTIONAL | § | |
| INSTITUTIONS DIVISION, | § | |
|    Respondent | § | |

## PETITIONER'S RESPONSE TO
## THE MOTION FOR SUMMARY JUDGMENT

TO UNITED STATES DISTRICT JUDGE LYNN N. HUGHES:

Robert Mitchell Jennings files Petitioner's Response To The Motion For Summary Judgment and would show as follows:

I.

### FAILURE TO PRESENT EVIDENCE OF
### PETITIONER'S DISADVANTAGED BACKGROUND

Petitioner alleged that counsel performed deficiently in failing to present testimony that he was raised in an impoverished home by a drug-addicted mother who had been convicted of theft; that he was often left without adult supervision; and that he was a poor student who dropped out of school in the ninth grade. The Texas Court of Criminal Appeals (TCCA) concluded that counsel did not perform

deficiently in failing to present evidence of petitioner's disadvantaged background where counsel did not believe that the testimony of petitioner's mother, Flora Jennings, or his sister, Carla, would be beneficial because Mrs. Jennings was not sympathetic to petitioner and Carla was relatively young when he left home. Respondent asserts that the state court decision was reasonable because calling Mrs. Jennings "could just as easily have convinced the jury that Jennings's character was unredeemable, if even his own mother was unwilling to plead for his life," and calling Carla would not have been beneficial because petitioner "was incarcerated for much of her life." Motion at 18.

The issue before this Court is whether the TCCA reasonably concluded that counsel made a sound strategic decision not to offer evidence of petitioner's disadvantaged background. The threshold principle underlying this determination is that counsel had a constitutional duty to present mitigating evidence that would reduce petitioner's moral blameworthiness and could have resulted in a life sentence. Both the TCCA and respondent ignored this principle by focusing on whether counsel's decision not to present this evidence was strategic. Although that is one factor to consider, it is not the only factor, and this Court must address whether, in the final analysis, counsel violated his constitutional duty to present mitigating evidence.

Counsel had three ways to present evidence of petitioner's disadvantaged

background: through petitioner, Mrs. Jennings, or Carla. Counsel decided not to call petitioner to testify after the trial court refused his request to restrict the cross-examination. Respondent asserts, "Counsel obviously believed that the damage to Jennings's case on punishment if subjected to cross-examination outweighed the benefit of the mitigating evidence Jennings would have provided in his testimony. This is not an unreasonable strategy." Motion at 17. While counsel's belief may be obvious to respondent, he did not assert any such belief in either of his state court affidavits. Therefore, respondent's assertion that counsel's decision not to call petitioner was based on this particular strategy is not firmly supported by the record. Moreover, even if that were counsel's strategy, it was unsound where it resulted in the jury not hearing the mitigating evidence. Petitioner fully discussed the primary offense in a written confession that was introduced into evidence and read to the jury. The jury also heard a lengthy recorded interview in which petitioner discussed with the police both the primary offense and the extraneous aggravated robberies. It is unlikely that the prosecutor could have elicited anything on cross-examination that would have been more damaging than what the police elicited in the recorded interview. Counsel's decision not to call petitioner to testify about his disadvantaged background cannot be sound strategy in the absence of an explanation how petitioner could have been cross-examined in a way that would have harmed him more than the damaging evidence already admitted.

3

If counsel did not want to call petitioner, he could have presented the mitigating evidence through Mrs. Jennings and/or Carla. Respondent assumes that Mrs. Jennings would not have been an effective witness on petitioner's behalf because she was a drug addict and thief who was unwilling to plead for her son's life. A reasonably competent lawyer would not have called her to plead for petitioner's life. Instead, he would have called her to demonstrate to the jury that petitioner's only parent and role model did not want him, neglected him, and ultimately abandoned him. Her flaws and lack of sympathy would have dramatically demonstrated to the jury the extent of his disadvantaged background. Furthermore, even though Carla was 11 years old when petitioner first left home and 13 years old when he first went to prison, she was old enough to perceive the deplorable living conditions and neglect that she discussed in her state court affidavit. Simply stated, counsel's decision not to present evidence of petitioner's disadvantaged background because the witnesses were imperfect was not sound strategy.

A federal habeas court can reject as unreasonable a state court finding that counsel made a strategic decision not to present certain evidence where that strategy was unsound. If counsel weighed the risks of calling petitioner and decided not to do so because he did not want petitioner to be cross-examined about the charged and extraneous offenses—and that decision was sound—then counsel

4

had a duty to present the mitigating evidence through Mrs. Jennings and/or Carla. Alternatively, if he weighed the risks of calling them and decided not to do so because Mrs. Jennings was unsympathetic to petitioner and Carla was 11 years old when petitioner left home—and that decision was sound—then he had a duty to present the mitigating evidence through petitioner. Both decisions cannot be sound strategy where the jury did not hear any mitigating evidence. Thus, the TCCA unreasonably concluded that counsel did not perform deficiently in this regard.

II.

## THE STATE COURT PREJUDICE ANALYSIS

**1. The TCCA Used An Incorrect Standard Of Review.**

Petitioner alleged that counsel's failure to present mitigating evidence of his brain damage and disadvantaged background resulted in prejudice because, had the evidence been presented, there is a reasonable probability that at least one juror would have voted to answer a special issue "no," resulting in a life sentence. The TCCA concluded that counsel performed deficiently only in failing to present evidence of petitioner's brain damage but that there was no reasonable probability that the jury would have answered any of the special issues, or a properly formulated Penry instruction, in such a way that he would have received a life sentence instead of the death penalty.

The TCCA used an incorrect standard of review in requiring petitioner to

5

demonstrate that the jury would have answered a special issue in his favor. The Supreme Court has held that prejudice is established in a capital case if there is a reasonable probability that one juror would have voted "no" to a special issue, resulting in a life sentence. Wiggins v. Smith, 539 U.S. 510, 537 (2003). Respondent counters that the TCCA did not require that petitioner prove that "the available mitigating evidence would have resulted in a 'unanimous' verdict supporting a life sentence. Rather, the court asked whether the evidence would have influenced the jury to respond to the special issues 'in such a way that [Jennings] would have received a life sentence, instead of the death penalty.'" Motion at 22-23. To the contrary, the TCCA clearly required that he demonstrate that the jury "would have answered" a special issue in such a way that he would have received a life sentence instead of the death penalty. In doing so, it ignored the effect of the jury being unable to answer a special issue. Article 37.071 (e) of the Code of Criminal Procedure provided in 1989 that, if the jurors could not unanimously agree on an affirmative answer to a special issue, the court had to impose a life sentence. Thus, the TCCA ignored the scenario in which at least one juror wanted to answer a special issue "no" and, as a result, the jury could not unanimously agree on an answer. Stated otherwise, the TCCA required petitioner to show that 12 jurors would have answered a special issue "no." That is too high of a burden and is not the law.

## 2. The TCCA Erroneously Failed To Consider Petitioner's Disadvantaged Background In Its Prejudice Analysis.

The TCCA acknowledged that counsel "may well have performed deficiently" in failing to investigate and present evidence of petitioner's brain damage. It found that a rational juror might believe that "[e]ven a concededly deliberate act might be perpetrated more readily by an actor with such brain damage . . . than by a normal person," and that "an individual growing up with frontal and/or temporal lobe damage has endured a generally more disadvantaged life than one who suffered no such disability." These factors could reasonably lead a jury to "enter the fact of [Jennings]'s brain damage and consequent diminished impulse control on the 'life' side of the ledger." However, the TCCA ultimately concluded that, because "there is precious little other evidence of mitigating value to counteract the substantial, non-statutory aggravating circumstances in this case," there was "no reasonable probability that the mitigating evidence would have impacted the jury's verdict on punishment." Respondent simply asserts that the TCCA decision was reasonable. Motion at 25-26.

The TCCA engaged in circular reasoning. The jury did not know about petitioner's brain damage or disadvantaged background. However, the TCCA analyzed the prejudice resulting from counsel's failure to offer evidence of brain damage without additionally considering that he failed to offer evidence of disadvantaged background. Had counsel done so, there would have been additional

7

evidence on the "life side of the ledger."

Where the TCCA resolves a claim that counsel failed to present constitutionally relevant mitigating evidence on the basis of a lack of prejudice, it must consider all of the mitigating evidence that counsel failed to present. Here, it considered only the evidence of brain damage. Should this Court conclude that counsel also performed deficiently in failing to present evidence of disadvantaged background, it must determine whether the cumulative effect of counsel's failure to introduce all of the mitigating evidence resulted in prejudice. Even if prejudice is analyzed only with regard to counsel's failure to offer evidence of brain damage, the TCCA unreasonably failed to consider whether, had that evidence been presented, there is a reasonable probability that one juror would have voted to answer a special issue "no," resulting in a life sentence. Cf. Porter v. McCollum, 558 U.S. ___, 130 S.Ct. 447 (2009) (state court unreasonably discounted evidence of defendant's childhood abuse in concluding he was not prejudiced by counsel's failure to present it).

Respondent completely ignored the most compelling argument in support of prejudice. The Supreme Court decided Penry v. Lynaugh, 492 U.S. 302 (1989) (Penry I), ten days before petitioner's jury was sworn. Penry I held that the Texas special issues were constitutionally inadequate to give the jury a vehicle to consider evidence of Penry's mental impairment. At Penry's retrial (as in petitioner's case),

the trial court submitted a nullification instruction in the punishment charge in an attempt to satisfy Penry I.[1] The Supreme Court subsequently held that this nullification instruction was an unconstitutional response to Penry I. See Penry v. Johnson, 532 U.S. 782 (2001) (Penry II). Had petitioner's counsel introduced evidence of brain damage and/or disadvantaged background, an appellate court ultimately would have reversed the death sentence pursuant to Penry II because of the unconstitutional nullification instruction. See Abdul-Kabir v. Quarterman, 550 U.S. 233 (2007); Brewer v. Quarterman, 550 U.S. 286 (2007); Smith v. Texas, 550 U.S. 297 (2007).

The above principle is illustrated by the decision of the TCCA on April 28, 2010, in Ex parte Smith, ____ S.W.3d __, 2010 WL 1687784 (Tex. Crim. App. 2010). The defense introduced evidence at the punishment stage that Smith's family lived in poverty, caused in part by the loss of his father when he was 12 years old; that his mother, who worked as a maid, could not afford to move the family from Houston's Fifth Ward, a dangerous neighborhood filled with prostitution, drugs, and crime; that, surrounded by drugs and poverty all his life, he became a drug addict; and that, lacking education, jobs skills, and opportunities, he turned to a life of crime to support his addiction. The trial court submitted a

---

[1] The prosecutor argued during summation at petitioner's trial, with regard to the nullification instruction, that the jurors promised during the *voir dire* examination to base their verdict on the law and the evidence and they were obligated to do "nothing less."

9

nullification instruction in the punishment charge. Smith contended in a habeas corpus proceeding that the nullification instruction did not provide the jury with a constitutionally adequate vehicle to consider and give effect to the evidence of poverty, a crime-ridden neighborhood, and drug addiction. The State conceded that the nullification instruction was constitutionally inadequate. Id. at *4. The TCCA acknowledged that a jury could find that the evidence of poverty and a crime-ridden neighborhood was relevant to Smith's moral culpability because it tended logically to prove that he "suffered the sort of deprived and troubled childhood that a fact-finder could reasonably deem to have mitigating value." Id. at *5. The TCCA set aside the death sentence, despite the absence of an objection to the nullification instruction at trial, because the jury did not have an adequate vehicle to give effect to this mitigating evidence. Id. at *7.

Had counsel introduced evidence of petitioner's brain damage and/or disadvantaged background, the nullification instruction would not have given the jury a constitutionally adequate vehicle to consider and give effect to this mitigating evidence. The TCCA would have engaged in the same analysis as in Smith and set aside the death sentence despite the absence of an objection at trial. There is a reasonable probability that the outcome of the proceeding would have been different had counsel presented the mitigating evidence. Petitioner has demonstrated the requisite prejudice. Thus, the TCCA decision to the contrary was unreasonable.

## III.

## **COUNSEL'S AFFIRMATIVELY PREJUDICIAL SUMMATION**

Petitioner contended that counsel performed deficiently in arguing during summation that, as a concerned member of the community, he could not quarrel with a death sentence. The state district court found that this argument constituted "plausible trial strategy" but failed to articulate what that strategy was. Counsel did not offer a strategic basis for this argument in either affidavit; had he done so, it could not have been a sound strategy. Neither the TCCA nor respondent addressed this allegation of deficient performance. Accordingly, respondent is not entitled to a summary judgment.

IV.

## **CONCLUSION**

The Court should deny the Motion For Summary Judgment and grant habeas corpus relief.

        Respectfully submitted,

        /S/ Randy Schaffer
        Randy Schaffer
        State Bar No. 17724500
        Federal ID No. 950

        The Schaffer Firm
        1301 McKinney, Suite 3100
        Houston, Texas 77010
        (713) 951-9555
        (713) 951-9854 (facsimile)
        noguilt@swbell.net

        Attorney for Petitioner
        ROBERT MITCHELL JENNINGS

## **CERTIFICATE OF SERVICE**

I served a copy of this document on Tina Miranda, assistant attorney general, P.O. Box 12548, Capitol Station, Austin, Texas 78711, by United States Mail, postage prepaid, on May 21, 2010. I electronically filed this document the same day with the United States District Clerk, Southern District of Texas, using the electronic case filing system of the court.

        /S/ Randy Schaffer
        Randy Schaffer