IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ROBERT MITCHELL JENNINGS, | § | |
| | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | H-09-219 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | |
| Justice-Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |
| | § | |

Memorandum and Order

Robert Mitchell Jennings filed a petition for a writ of habeas corpus. Rick Thaler moved for summary judgment. Thaler's motion is denied and Jennings' Petition is granted.

I. Background

The facts are not in dispute. Houston Police Officer Elston Howard was in the Empire Bookstore, a sexually oriented business, arresting the store clerk for violating a city ordinance. Jennings entered to rob the store. He shot Howard twice in the neck. Howard tried to leave the store, but collapsed on the floor. Jennings shot Howard two more times from behind. Howard died.

Jennings was convicted of capital murder. During the penalty phase of Jennings's trial, the State presented evidence of Jennings's extensive criminal history, including juvenile offenses, three aggravated robberies, and burglary of a habitation. Jennings also committed numerous prison disciplinary violations.

Jennings's only witness was a chaplain with the Harris County Sheriff's office. He testified

1

that Jennings changed for the better during his pretrial detention.

The jury found that Jennings acted deliberately in killing Howard and that there was a probability that Jennings would commit future acts of criminal violence constituting a continuing threat to society. The trial court sentenced him to death. The Texas Court of Criminal Appeals ("TCCA") affirmed the sentence and conviction, *Jennings v. State*, No. AP-70,911 (Tex.Crim.App.), *cert. denied*, 510 U.S. 830 (1993), and denied Jennings's application for a writ of habeas corpus, *Ex Parte Jennings*, Nos. AP-75,806 and 75,807 (Tex.Crim.App. 2008).

II. <u>Discussion</u>

A.    <u>The Anti-Terrorism and Effective Death Penalty Act</u>

This petition is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, this Court cannot grant relief on claims that were decided on the merits by the state courts unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Kitchens v. Johnson*, 190 F.3d 698, 700 (5th Cir. 1999).

For questions of law or mixed questions of law and fact decided on the merits in state court, this Court may not grant relief unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent]." *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). A state court decision is contrary to clearly established precedent if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than

. . . [the Supreme Court] has on a set of materially indistinguishable facts.'" *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).

The "unreasonable application" standard permits relief only if a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 406. "In applying this standard, we must decide (1) what was the decision of the state courts with regard to the questions before us and (2) whether there is any established federal law, as explicated by the Supreme Court, with which the state court decision conflicts." *Hoover v. Johnson*, 193 F.3d 366, 368 (5th Cir. 1999). A federal court's "focus on the 'unreasonable application' test under section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence." *Neal v. Puckett*, 239 F.3d 683, 696 (5th Cir. 2001), *aff'd*, 286 F.3d 230 (5th Cir. 2002) (en banc), *cert. denied sub nom. Neal v. Epps*, 537 U.S. 1104 (2003). The sole question under the 'unreasonable application' prong is "whether the state court's determination is 'at least minimally consistent with the facts and circumstances of the case.'" *Id.* (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)); *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001) ("Even though we cannot reverse a decision merely because we would reach a different outcome, we must reverse when we conclude that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"). The state court's factual determinations are

3

presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Jackson v. Anderson*, 112 F.3d 823, 824-25 (5th Cir. 1997), *cert. denied*, 522 U.S. 1119 (1998).

B.      The Standard for Summary Judgment

        "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000). Ordinarily, the "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). When, however, the petitioner fails to show by clear and convincing evidence that the presumption of correctness required by 28 U.S.C. § 2254(e)(1) should not apply to state court findings, those findings are entitled to deference. *See Marshall v. Lonberger*, 459 U.S. 422, 432 (1983); *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Foster v. Johnson*, 293 F.3d 766, 777 (5th Cir.), *cert. denied sub nom Foster v. Epps*, 537 U.S. 1054 (2002); *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied*, 532 U.S. 915 (2001); *Emery v. Johnson*, 940 F.Supp. 1046, 1051 (S.D. Tex. 1996), *aff'd*, 139 F.3d 191 (5th Cir. 1997), *cert. denied*, 525 U.S. 969 (1998)

C.      Summary Judgment

        Jennings asserts that he received ineffective assistance of counsel during the penalty phase of his trial. To prevail on a claim for ineffective assistance of counsel, Jennings

> must show that . . . counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficient performance by counsel,

4

Jennings must demonstrate that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. Reasonableness is measured against prevailing professional norms, and must be viewed under the totality of the circumstances. *Id.* at 688. Review of counsel's performance is deferential. *Id.* at 689.

In assessing prejudice in a sentencing hearing, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland,* 466 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1.     Deficient Performance

    a.     Failure to Present Background Evidence

Counsel wanted Jennings to testify about his upbringing without being subject to cross examination. 39 Tr. at 196-200.[1] When the trial court refused that request, counsel decided not to call Jennings. Jennings now contends that counsel was deficient. He argues that, because the State presented evidence of his criminal past, no additional harm could have come from cross examination. He also observes that his mother and his sister were available to testify about his childhood.

Evidence about Jennings's background would have shown that he grew up in poverty, that he was conceived as a result of a rape, that his mother gave birth to him when she was 17 and blamed his birth for interrupting her education, she resented him for it and made her resentment plain to him,

---

[1]     "TR" refers to the transcript of Jennings's trial.

and that she was a drug addicted single mother.  1 SH at 77-80.[2]  The record shows that counsel elected not to call Mrs. Jennings because she was unsympathetic to Jennings, but Jennings argues that any resentment she displayed on the witness stand would only emphasize his difficult background.  Counsel did not call Jennings's sister Carla because he thought she was too young to remember relevant facts when Jennings first entered the juvenile justice system.  Jennings points out that she was 12 years old at the time, and argues that she was old enough to remember the family's living conditions.  1 SH at 351.[3]

Counsel did not review the clerk's file from Jennings's previous convictions.  That file contained evidence that Jennings has a low IQ and some brain damage, resulting in poor impulse control.  Counsel acknowledged that he would have sought expert psychological assistance if he knew of the previous examinations.  1 SH at 41-42.  Jennings also argues that counsel's failure to present evidence of low intelligence and mental health problems forfeited a habeas claim that would have resulted in a new sentencing hearing.

1.)   <u>Failure to Call Jennings</u>

The state habeas court found that counsel had valid strategic reasons for choosing not to call Jennings, his mother, or his sister. 2SH at 416, 426.  Jennings now argues that counsel's opinion that cross examination would harm his case was not valid in light of the State's evidence of his extensive criminal background.  The record does not show what counsel feared, but cross examination always

---

[2]      "SH" refers to the transcript of Jennings's state habeas corpus proceeding.

[3]      It is not clear that Carla was 12 years old at the time.  Her affidavit indicates that she was born in 1961 or 1962 (her 1996 affidavit states that she was 34 years old), and TDCJ records list Jennings's birthdate as 1957.  Carla's affidavit estimates that Jennings entered the juvenile justice system when he was 15, at which time Carla would have been about 10. Nonetheless, a 10 year old is certainly old enough to be aware of her family's living conditions.

6

carries risks. It may be true that there was no additional evidence of Jennings's criminal history, but counsel could reasonably have feared that Jennings would appear unremorseful, be provoked into an angry outburst, or otherwise appear in an unsympathetic light.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689. Because there were legitimate risks, counsel's decision is entitled to deference as a valid strategic decision.

### 2.)   Failure to Call Jennings's Mother

Counsel also stated that he elected not to call Mrs. Jennings because she was unsympathetic to her son. Jennings argues that this would have made her a more potent witness, demonstrating how he grew up without any parental support. While Jennings's argument is compelling, *Strickland* requires great deference to counsel's decisions. Counsel's concerns that Mrs. Jennings's hostility would be harmful, *e.g.*, might convince jurors that Jennings was irredeemable (if even his own mother does not like him), were legitimate, even if Jennings offers a valid argument for viewing the potential impact of the testimony differently. Counsel's decision not to call Mrs. Jennings is within the bounds of counsel's reasonable discretion.

### 3.)   Failure to Call Jennings's Sister

Counsel's explanation for not calling Jennings's sister makes no sense. Counsel stated that Jennings's sister was too young to remember pertinent events. The record shows that she was about

10 years old when Jennings first entered the juvenile justice system. That is certainly old enough to remember conditions at home at the time. Counsel's explanation is therefore contrary to the facts, and the TCCA's conclusion "was based on an unreasonable determination of the facts . . . ." 28 U.S.C. § 2254(d).

Moreover, while counsel's explanations for not calling Jennings or his mother might make sense in isolation, the decision to call *none* of these three potential witnesses, and therefore present *no* evidence of the emotional and economic deprivations of Jennings's background, was not sound trial strategy. Whatever damage counsel may have feared from cross examination of Jennings or Mrs. Jennings's hostility toward her son is far outweighed by the damage caused by presenting *no* evidence at all of Jennings's background, *i.e.*, giving the jury no reason not to impose a death sentence. *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Williams v. Taylor,* 529 U.S. 362 (2000) make clear that failure to present available significant mitigating evidence resulting in the virtual absence of a mitigation case is deficient performance. Considering both the objective unreasonableness of counsel's conclusion that Jennings's sister was too young to remember pertinent events and conditions and the objective unreasonableness of presenting *no* evidence of Jennings's background, the state court's conclusion that counsel was not deficient was unreasonable.

b.    Failure to Present Evidence of Low IQ and Mental Health Issues

In 1978, a state court ordered a psychological evaluation to determine Jennings's competency to stand trial after he was charged with two aggravated robberies and burglary of a habitation. The psychologist, Dr. J.M. Bloom, found that Jennings has an IQ of 65 and mild organic brain dysfunction. 2 SH at 391-94. There is evidence that the brain damage was caused by a childhood injury. *Id.* at 77-78.

8

There is also evidence that Jennings was malingering. 1 SH at 48-49, 336-47. Some of the evidence of malingering is in Dr. Bloom's report. The State presented a report by Victor R. Scarano, M.D. Dr. Scarano states unequivocally that Jennings malingered. His opinion was not based on an examination of Jennings, but on review of documents. *Id.* at 336-47.

The state habeas court found that counsel was not deficient because the evidence did not show organic brain dysfunction. 2 SH at 414, 425. Specifically, the court found that Dr. Bloom stated "that the applicant was malingering or attempting to present himself as a mentally ill individual in order to delay court proceedings." 2 SH at 425. The court's conclusion quotes selectively from Dr. Bloom's report. Bloom concluded that Jennings has low IQ and mild organic brain dysfunction but that he was exaggerating his symptoms in an attempt to appear incompetent to stand trial.

> Although the results of psychological assessment techniques suggests the presence of mild mental[] retardation and mild organic brain dysfunction, it is [my] opinion that these are not severe enough to produce the kind of defects which Mr. Jennings manifested during [the] interview."

*Id.* at 393. The court's conclusion was based on an unreasonable determination of the facts; Dr. Bloom's report *did* conclude that Jennings has low IQ and brain damage. Counsel, however, did not know this because they never reviewed the clerk's file from Jennings's prior convictions.

"[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Wiggins v. Smith*, 539 U.S. at 521(internal quotation marks and alteration omitted) (quoting *Strickland*, 668 U.S. at 690-91). When assessing the reasonableness of an attorney's investigation, a court must "consider not only the quantum of evidence already known to counsel, but also whether the known

9

evidence would lead a reasonable attorney to investigate further." *Id.* at 527. Based on the evidence available to counsel at the time of trial, reasonable investigation, *i.e.*, reading the clerk's files from Jennings's prior convictions, would have revealed that Jennings was diagnosed with a low IQ and organic brain damage, and would have led to further investigation and a request for expert assistance. Counsel was deficient for failing to investigate.

        c.     <u>Closing Argument</u>

In his closing argument at the penalty phase, counsel stated that "I can't quarrel with" a decision to sentence Jennings to death because counsel, like the jurors, lived and worked in Harris County and cared about having a safe community. He nonetheless asked the jurors to give sufficient weight to the mitigating evidence to return a life sentence. 39 Tr. ay 239-40. Jennings now argues that this was ineffective.

Counsel was trying to convince the jury to decline to impose a death sentence on a man who they found murdered a police officer. The penalty phase evidence showed that Jennings had a long and violent criminal history. There was virtually no mitigating evidence. It is clear from the record that counsel was trying to identify with the jurors, and to convince them that he was a reasonable man who shared their interest in a safe community. In that posture, he argued that they should still impose a life sentence. In light of the extremely weak mitigation case, the state habeas court's conclusion that this was a plausible strategy was not unreasonable.

        2.     <u>Prejudice</u>

In determining whether Jennings was prejudiced by counsel's deficient performance, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."

10

*Strickland*, 465 U.S. at 695.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  Texas requires a unanimous jury to impose a death sentence. TEX. CODE CRIM PROC. art. 37.071 § 2(d)(2).  Therefore, if there is a reasonable probability that even one juror would have voted against a death sentence, then Jennings was prejudiced.

a.    <u>Evidence of Brain Damage</u>

One of the special issues the jury had to answer was whether Jennings deliberately killed Howard .[4]  The State now argues, and the TCCA found, that evidence of poor impulse control would have been worthless because Jennings murdered Officer Howard in a deliberate manner, approaching Howard from behind and firing the last two shots from point blank range after Howard collapsed. The TCCA concluded that no juror would have found that Jennings acted impulsively, as opposed to deliberately, because "at least two to three seconds" lapsed between the first two shots and the last two.  *Ex Parte Jennings*, Nos. AP-75,806 and 75,807 at 15 (Tex. Crim. App. Nov. 26, 2008).  This conclusion is unreasonable.

All that was necessary for a "no" answer to the deliberateness special issue was for one juror to find that Jennings acted impulsively and not deliberately.  In support of this argument, counsel could have presented evidence that Jennings had organic brain dysfunction resulting in poor impulse control.  The TCCA has explained that "[t]he person who engages in certain conduct deliberately has upon consideration said to himself, 'Let's do it.'"  *Fearance v. State* 620 S.W.2d 577, 584 n.6 (Tex.Crim.App., 1980).  A juror could certainly have found that a brain-damaged man who has poor

---

[4]    "[W]hether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that ... death ... would result").  *See* former TEX. CODE CRIM. PROC. art. 37.071 § b(1).

11

impulse control and a low IQ did not engage in that kind of reflection and consideration during a lapse of two or three emotionally charged seconds. The TCCA's contrary conclusion was an unreasonable determination of the facts. *See, e.g., Ex Parte Garrett* 831 S.W.2d 304, 307 (Tex.Crim.App. 1991) (Clinton, J., dissenting on grounds that evidence of brain damage and mental illness not presented at trial raised a reasonable probability of a different outcome).[5]

      b.   <u>Background Evidence</u>

The factual basis for Jennings's claim is comparable to those in *Wiggins v. Smith*, 539 U.S. 510 (2003) and *Williams v. Taylor*, 529 U.S. 362 (2000). In both cases, counsel failed to investigate and develop a mitigation case. Evidence presented during postconviction proceedings showed that both Wiggins and Williams suffered parental abuse and neglect as children, and had low intelligence (though neither was mentally retarded). *See, e.g.*, 539 U.S. at 516-17, 525; 529 U.S. at 370. Williams, like Jennings, had an extensive criminal history dating to his childhood and including violent offenses. 529 U.S. at 368-69. In each case, the Supreme Court found the petitioner was prejudiced by counsel's failure to investigate, develop, and present mitigating evidence. 539 U.S. at 536; 529 U.S. at 397-98.

"[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background . . . may be less culpable than defendants who have no such excuse."

---

[5]     Judge Clinton's dissent is not cited as precedent, but as support for the conclusion that there is a reasonable probability the result would have been different if counsel presented the evidence of brain damage and resulting poor impulse control. If a Judge of the Texas Court of Criminal Appeals could find similar evidence in a similar case compelling, then it is reasonably probable that at least one juror could have found that Jennings did not act deliberately.

*Penry v. Lynaugh*, 492 U.S. 302, 319 (1989).

Evidence about Jennings's background and character, his low intelligence, and his brain damage leading to poor impulse control, might have been sufficient to convince at least one juror that Jennings did not deserve a death sentence.  *See Williams*, 529 U.S. at 370 (finding prejudice when counsel failed to present evidence of "neglect during [Williams's] early childhood, as well as testimony that he was borderline mentally retarded, had suffered repeated head injuries, and might have mental impairments organic in origin.")  The similarities between this case and *Williams* are too strong to ignore, and the TCCA "decided [the] case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 406.  The TCCA's decision was therefore contrary to clearly established federal law and Jennings has established prejudice.

        c.     *Penry*

Jennings also argues that evidence of his low intelligence would have entitled him to state habeas relief after the Supreme Court decided *Penry v. Johnson*, 532 U.S. 782 (2001). Because Jennings never raised this claim based on this evidence in state court, it is unexhausted and procedurally defaulted.[6]  *See* 28 U.S.C. § 2254(b)(1); *Orman v. Cain*, 228 F.3d 616, 619-20 (5th Cir. 2000); *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

### III.  Order

1.      Jennings's Petition (Docket Entry 1) is Granted;

2.      Thaler's Motion for Summary Judgment (Docket Entry 6) is Denied;

---

[6]     Jennings raised a *Penry* claim in state court but limited it to the evidence he presented at trial.  That was insufficient to exhaust the claim.  *See Jones v. Jones*, 163 F.3d 285, 298 (5th Cir. 1998); *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989).

3.     Thaler shall release Jennings from custody unless, within 120 days, the State of Texas grants Jennings a new sentencing hearing or resentences him to a term of imprisonment as provided by Texas law at the time of Jennings's crime; and

4.     This Order is stayed until all post-judgment motions and appeals are final or the time to file such motions and appeals expires.

So Ordered

Lynn N. Hughes
United States District Judge

Houston, Texas
April 23, 2012

14