UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT MITCHELL JENNINGS,

Petitioner,

§

§

v.

§          No. 4:09-cv-00219

§

LORIE DAVIS, Director,
Texas Department of Criminal
Justice, Correctional Institutions
Division

§          Capital Case

§

§          Execution Date Set for

§          January 30, 2019

Respondent.

## PETITIONER'S OPPOSED MOTION FOR A STAY OF EXECUTION

Petitioner Robert Jennings seeks a stay of execution.

In order to ensure he had one fair opportunity at post-conviction review, Mr. Jennings had the right to conflict-free counsel throughout federal habeas proceedings.[1] But he did not get conflict-free counsel until this Court's orders of October 23 and November 21, 2018, a few months before his January 30, 2019, execution date. ECF Nos. 27, 31. New counsel have already identified substantial

---

[1] 18 U.S.C. § 3599(a)(2) (right to counsel); *id.* § 3599(e) (counsel shall represent client through "all available post-conviction process"); *McFarland v. Scott*, 512 U.S. 849, 858 (1994) (right includes "meaningful[]" assistance of counsel); *Christeson v. Roper*, 135 S. Ct. 891, 895 (2015) (right to counsel free from a conflict of interest).

grounds for altering the judgment that denied the ineffective-assistance-of-trial-counsel claim filed by conflicted counsel. Despite the diligence of conflict-free counsel, the remaining time is insufficient to make up for the years of neglect that preceded their appointment. This Court can and should enter a stay of execution to give meaningful effect to its Orders appointing counsel.[2]

## BACKGROUND

This statement recounts no more than the essential facts in this case's long history.

### A.     Trial and Post-Conviction Proceedings

In 1989, Mr. Jennings was convicted of capital murder and sentenced to death for the death of peace officer Elston Howard in the 208th Judicial District Court of Harris County, Texas. At the punishment phase, the prosecution presented evidence of Mr. Jennings's lengthy criminal history. *See generally* 39 RR 1-184. Mr. Jennings's trial counsel presented only one mitigation witness, a jail chaplain, who met Mr. Jennings in the county jail, saw him a few times a week, and concluded that he was not "incorrigible." 39 RR 187-89.  Defense counsel listed out a number of

---

[2] *Christeson*, *supra*, 135 S. Ct. at 895-96 (reversing denial of stay of execution to allow conflict-free counsel to investigate grounds for motion under Fed. R. Civ. P. 60(b)); *McFarland*, *supra*, 512 U.S. at 858 (permitting stay based on appointment alone); 28 U.S.C. § 2251(a)(3) (same).

"mitigating facts" about Mr. Jennings that he intended to call Mr. Jennings to testify to. 39 RR 196–200.

The conviction and sentence were affirmed in 1993. *Jennings v. State*, No. AP-70,911 (Tex. Crim. App.) (not designated for publication), *cert. denied*, 510 U.S. 830 (1993).

Counsel Randy Schaffer represented Mr. Jennings in state habeas proceedings and filed on his behalf a twenty-nine-page state habeas corpus application in September 1996. The application contained two grounds for relief. 1 SH at 1-49. In relevant part, the application alleged that trial counsel had provided ineffective assistance at the punishment phase, including by failing to discover and present mitigating evidence of applicant's mental impairment, 1 SH 21-26, and failing to present evidence of applicant's disadvantaged background, *id.* 26-27. *See generally Strickland v. Washington*, 466 U.S. 667 (1984). The application faulted trial counsel for failing to present the testimony of Mr. Jennings's mother and sister, who "could have testified extensively about his troubled childhood." 1 SH 27; *see also* 1 SH 77-78 (Affidavit of Flora Jennings); 1 SH 79-80 (Affidavit of Carla Jennings).

Without conducting a hearing, the state trial court adopted the state's proposed findings of fact and conclusions of law recommending that relief be

denied in 2006.[3] After briefing and argument, the Texas Court of Criminal Appeals
(CCA) denied relief in November 2008, without reference to the trial court's
findings. *Ex parte Jennings*, Nos. AP-75,806 & AP-75,807, 2008 WL 5049911 (Tex.
Crim. App. 2008) (not designated for publication), *cert. denied,* 556 U.S. 1209
(2009). The CCA held that counsel's decision not to present the mitigating
testimony of Mr. Jennings's mother and sister, in particular, was not deficient. *Id* at
*5. The CCA explicitly did not reach whether trial counsel had performed
deficiently by failing to "conduct[] a full-blown mitigation investigation, depriv[ing
Mr. Jennings] of *other* witnesses who could and would have testified to the full extent
of his disadvantaged background." *Id.* "[B]ecause [Mr. Jennings] now identifies no
such witnesses," the court concluded he had failed to show prejudice from trial
counsel's likely deficiency. *Id.*

Just two months later, Mr. Jennings, represented again by counsel Schaffer,
filed a federal habeas petition in this Court. The petition had no exhibits, did not
include any new allegations, and made no request for an evidentiary hearing,
discovery, or funding for further investigation. In April 2012, this Court granted

---

[3] The original trial judge, Hon. Thomas Routt, was no longer sitting. The
State's proposed findings and conclusions of law were entered by Judge Routt's
successor, Hon. Denise Collins, without the benefit of a hearing or recollection
from the trial.

relief on Mr. Jennings's claim of ineffective assistance of trial counsel. ECF No. 10.

Among this Court's holdings, this Court found that trial counsel's overall decision

to present no witnesses to explain Mr. Jennings's life was not reasonable and the

state court had unreasonably applied clearly established law: "whatever damage

counsel may have feared from cross examination of Jennings or Mrs. Jennings's

hostility toward her son is far outweighed by the damage caused by presenting no

evidence at all of Jennings's background, i.e., giving the jury no reason not to impose

a death sentence." *Jennings v. Thaler*, No. H-09-219, 2012 WL 1440387, at *4 (S.D.

Tex. Apr. 23, 2012), *rev'd sub nom. Jennings v. Stephens*, 537 F. App'x 326 (5th Cir.

2013), *remanded*, 135 S. Ct. 793 (2015), *and aff'd*, 617 F. App'x 315 (5th Cir. 2015).

This Court also found unreasonable the state court's determination—from the 1996

affidavit alone—that Mr. Jennings's sister, Carla, was "too young to remember

pertinent events and conditions." *Id.* The Fifth Circuit reversed that decision in July

2013. *Jennings v. Stephens*, 537 F. App'x 326 (5th Cir. 2013). The Supreme Court

reversed the Fifth Circuit's decision for failure to consider all issues on appeal and

remanded. *Jennings v. Stephens*, 135 S. Ct. 793 (2015). Initial federal habeas

proceedings finally came to a close in 2015, when the Fifth Circuit rejected the

remaining collateral issue on remand and again denied relief. *Jennings v. Stephens*,

617 F. App'x 315 (5th Cir. 2015).

### B.      Federal Habeas Counsel's Conflict of Interest and the Appointment of Conflict-Free Counsel

Five weeks before this Court entered its Memorandum and Order granting Mr. Jenning's ineffectiveness claim, in March 2012, the Supreme Court held that federal habeas petitioners could raise a procedurally defaulted ineffective-assistance-of-trial-counsel claim, if counsel at the initial collateral-review stage at which the claim had to be raised first were themselves ineffective for failing to present the claim. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). That decision is what gives life to the duty this Court has now assigned to undersigned counsel.

Two months before the Court of Appeals ruled on Mr. Jennings's appeal, in May 2013, the Supreme Court removed all doubt: *Martinez* applied to Texas post-conviction cases. *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). As a result, here, Mr. Jennings's federal habeas counsel, who had also served as state habeas counsel, labored under a conflict of interest. *See Mendoza v. Stephens*, 783 F.3d 203, 211 (5th Cir. 2015). Mr. Jennings was entitled to new counsel for federal review of the state habeas counsel's performance under *Martinez* and *Trevino*. *Id.*

Conflicted counsel did not raise his conflict of interest until September 20, 2018, over a month after the state trial court set an execution date for Mr. Jennings. ECF No. 24. In the meantime, Mr. Schaffer continued to represent Mr. Jennings in successive state habeas litigation, seeking to vindicate Mr. Jennings's right to retrial

6

under *Penry v. Johnson*, 532 U.S. 782 (2001), and its progeny.  The CCA dismissed the applications as an abuse of the writ and denied a suggestion to reconsider an earlier application. *Ex parte Jennings*, Nos. WR-67,208-03 and WR-67,208-04 (Tex. Crim. App. May 16, 2018); *Ex parte Jennings*, Nos. WR-67,208-02 and WR-67,208-03, 2018 WL 4472744 (Tex. Crim. App. Sept. 19, 2018).  Mr. Schaffer filed a petition for a writ of *certiorari* and an application for a stay of execution in the Supreme Court on November 20, 2018. Petition for Writ of Certiorari, *Jennings v. Texas*, No. 18-6848 (U.S.).

Over the Attorney General's opposition, this Court appointed conflict-free counsel Edward Mallett on October 23.  ECF No. 27. Mr. Mallett moved this court for co-counsel the Federal Public Defender for the Western District of Texas, Capital Habeas Unit (Federal Defender), *see* ECF No. 28, because he could not "effectively carry out his mission under the Court's order without [] substantial assistance." ECF No. 30. The state again opposed. On November 21, this Court granted the motion, appointing the Federal Defender. ECF No. 31.

## ARGUMENT

Conflict-free counsel require additional time to conduct their investigation of serious indications of ineffectiveness by both state habeas counsel and trial counsel. This Court has the authority to issue a stay of execution under these circumstances.

The Supreme Court and Fifth Circuit have frequently provided stays in order to allow new counsel appointed under 18 U.S.C. § 3599 the opportunity to develop and present any potential claims that might support a writ of habeas corpus—even when counsel is appointed on the eve of an execution, the potential claims are still undeveloped, and procedural obstacles might appear to foreclose review of the potential claims. Otherwise, the appointment of counsel would be an "empty promise." *In re Hearn*, 376 F.3d 447, 457 (5th Cir. 2004).

## A.    A Stay Is Warranted Under the Circumstances.

This Court previously saw grounds for appointing both Mr. Mallett and the Federal Defender based on Mr. Jennings's motion for conflict-free counsel. Conflict-free counsel have worked diligently to investigate both potential claims of ineffective assistance of trial counsel that Mr. Jennings could raise and issue concerning the ineffective assistance of state habeas counsel. That investigation has so far yielded new evidence suggesting that conflicted counsel's deficiencies in state habeas proceedings are far more pervasive than conflicted counsel's motion represented. *See* Pet'r's Mot. Appoint Conflict-Free Counsel at 5, ECF No. 20.  As set forth in the *ex parte* declaration of counsel (Declaration of Edward Mallett, attached as Sealed

Exhibit C),[4] investigation of conflicted counsel's work has uncovered additional evidence that should have been developed and presented to the trial court, the state habeas court, and this Court under prevailing professional norms.

Although Mr. Jennings's new conflict-free counsel have worked diligently to investigate and develop potential grounds for relief,[5] their ability to fulfill this Court's mandate has been frustrated by unforeseen delays, uncertainty caused by pending litigation, and the sheer scope of their investigation.

Counsel is obligated to investigate any potential ineffectiveness-assistance-of-trial-counsel claims Mr. Jennings might raise as well as conflicted counsel's performance during Mr. Jennings initial state habeas proceedings. *See Mendoza*, 783 F.3d at 208 (new counsel must "determine whether, in new counsel's professional judgment, there are claims that should have been, but were not, raised in the state habeas proceedings."). This requires current counsel not only to determine what

---

[4] Petitioner has filed separately a motion to file exhibits *ex parte* and under seal, because they concern attorney-client communications, privileged and confidential attorney work-product and mental impressions, and sensitive information. Petitioner refers to these exhibits as sealed and ex parte.

[5] Petitioner is preparing a chronology of counsel's work to date, which documents their steadfast efforts to develop and present their client's case. Counsel intends to supplement their motion with leave of the court with this additional document. Because this chronology unavoidably discloses privileged and confidential attorney work product, counsel have sought leave to submit this document *ex parte* and under seal.

trial counsel and state habeas counsel knew and did, but what they should have known and done. *Wiggins v. Smith*, 539 U.S. 510, 524-25 (2003). And that means conflict-free counsel must investigate each counsel from their independent perspective. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In a capital case, trial counsel has a constitutional duty "to conduct a thorough investigation of the defendant's background," *Williams v. Taylor*, 529 U.S. 362, 396 (2000), and to identify "all reasonably available mitigating evidence," *Wiggins*, 539 U.S. at 524. A similar standard governs state habeas counsel. *Trevino v. Davis*, 829 F.3d 328, 348–49 (5th Cir. 2016) (applying "the same *Strickland* requirement to perform some minimum investigation prior to bringing the initial state habeas petition" to state habeas counsel); *see also* Tex. Code Crim. Proc. art. 11.071, § 3 (requiring state habeas counsel to investigate "the factual and legal grounds" for a state habeas application). Even though conflicted counsel has conscientiously identified some errors, conflict-free counsel cannot limit their investigation to those areas the conflicted lawyer has identified.

1. This Court appointed the Federal Defender so that conflict-free counsel would have enough manpower to review conflicted counsel's files and assess whether his investigation was in keeping with his obligations—that is, to conduct the first step in any ineffectiveness investigation. *See* ECF No. 30 at 2.

10

In a typical case, a brief time period to bring these matters to light might be adequate, as a petitioner could retrace the investigation and extra-record factual development already completed and pleaded by prior counsel in state habeas and initial federal habeas proceedings. This is not the typical case, however.

Initial review of federal and state records; conflicted counsel's pleadings, notes, and billing records; and counsel's preliminary investigation indicates apparently deficient investigation of trial counsel's performance in numerous areas. Accordingly, undersigned counsel must conduct the investigation from scratch—as well as investigating and developing evidence regarding deficiencies in counsel's representation in state habeas proceedings.

Since appointment, conflict-free counsel have jointly undertaken the numerous tasks this inquiry requires. Counsel have collected and digested the trial record, the state habeas record, and Mr. Jennings's file maintained by conflicted counsel. Counsel have visited Mr. Jennings multiple times, interviewed his family members, contacted all prior counsel and investigators, received the assistance of consulting experts. Counsel have requested any records on Mr. Jennings from juvenile probation, the Texas Youth Council, the Texas Department of Criminal Justice, school records, the University of Texas Medical Branch, Houston Police Department, Houston Independent School District, all prior mental health experts,

11

hospitals at which Mr. Jennings was treated, the Harris County Auditor, the Harris County Sheriff's Office. Production to date has been minimal.

These preliminary tasks to become familiar with Mr. Jennings's case and background are by no means exhaustive of counsel's responsibilities. In order to perform effectively (and assess prior counsel's effectiveness), counsel must take the leads generated from these documents, witnesses, and records, and pursue them to their conclusion. Counsel must carefully review the District Attorney's file. Counsel must return to witnesses with new information, or seek new routes to obtain records when first attempts fail. And following these tasks, counsel must develop and present any evidence in support of any potential claims.

2. Respondent and conflicted counsel have delayed essential record collection and investigation. Conflicted counsel has obstructed access to the client's file.[6] "The client's file belongs to the client." *In re McCann*, 422 S.W.3d 701, 704 (Tex. Crim. App. 2013). Conflicted counsel refused to allow new counsel to review Mr. Jennings's file outside his presence. *See* Declaration of Edward Mallett, Sealed Exhibit C. Due to scheduling conflicts—including taking a capital murder case in Waco to trial—conflicted counsel was unavailable until December 7. *Id.* After

---

[6] Undersigned counsel do not mean to suggest this has been conscious or deliberate obstruction. Rather, Mr. Schaffer sought to retain his file in his keeping while preparing Mr. Jennings's recent filing in the Supreme Court.

rescheduling the appointment due to inclement weather, undersigned counsel were only able to arrange for travel to review the file on December 12. *Id.* Even after initial review, counsel have learned that some parts of the file relevant to their investigation had still not been produced by conflicted counsel. Conflict-free counsel were only able to ensure *all* relevant files were produced on December 20.

Mr. Jennings's file contains essential documentation of what all prior counsel—including conflicted counsel—have done in the case. It is the *sine qua non* for conflict-free counsel's review. Indeed, counsel's review of the file suggests a troubling lack of investigation by all prior counsel, including, but not limited to, evidence of Mr. Jennings's history of drug abuse. *Compare* Pet'r's Mot. Appoint Conflict-Free Counsel at 5, ECF No. 20 *and* 39 RR 194-200 (trial counsel's sparse summary of mitigation evidence) *with* Sealed Exhibit C. Nevertheless, undersigned counsel requires time to prove what—on information and belief—appears to constitute deficient investigation of various failures of trial counsel.

3. Respondent has likewise denied Mr. Jennings's request to see his entire prison records based on an asserted exception for confidential materials to the Public Information Act. *See* Exhibit A (December 10, 2018 e-mail from TDCJ Assistant General Counsel William Overton to Michael Heath, Paralegal, FPD). Prison records are an essential source of information about Mr. Jennings's life. The

collection and review of prison records have in the past led to "eleventh hour"
discoveries that have formed the basis for a stay, and ultimately, relief from a death
sentence. *See In re Campbell*, 750 F.3d 523, 535 (5th Cir. 2014) (granting a stay of
execution based in part on newly discovered prison record after "the Texas
Department of Criminal Justice failed to turn over the results of the intelligence test
they had administered on Campbell upon the attorney's request for '*any and
all* intellectual functioning tests,' and . . . gave [petitioner's] attorney incorrect and
incomplete information."); Harris County Dist. Att'y Office, News Advisory, *Robert
James Campbell Resentenced Tuesday to Life in Prison*, June 27, 2017,
https://app.dao.hctx.net/robert-james-campbell-resentenced-tuesday-life-prison.

4. An additional cause for delay was the discovery of appointed counsel
Edward Mallett's potential for the appearance of a conflict of interest in the
proceedings. As described in Exhibit B, conflict-free counsel discovered that Mr.
Mallett had served as an affiant in support of state habeas proceedings in 1996. *See* 1
SH 81-83; Tex. R. Prof'l Conduct 1.06. Mr. Mallett has concluded that his interest
in describing the successful efforts he made in a different state capital case. Thus,
Mr. Mallett believed his participation did not materially affect his representation and
sought Mr. Jennings informed waiver of the conflict on December 17. *See* Exhibit B

14

at 4. This required a full-day trip to the TDCJ Polunsky Unit to meet and advise Mr. Jennings.

5. Mr. Jennings's new counsel await resolution of Mr. Jennings's *Penry v. Johnson* issue, still pending before the Supreme Court. Petition for Writ of Certiorari, *Jennings v. Texas*, No. 18-6848 (U.S.). Counsel cannot make an informed strategy about how to plead the related ineffectiveness issue until the Supreme Court has resolved conflicted counsel's petition for certiorari.

## B.   This Court Has the Power and Duty to Give Meaningful Effect to Mr. Jennings's Statutory Right to Federal Habeas Counsel.

As this Court's Orders reflect, 18 U.S.C. § 3599 grants Mr. Jennings the right to the assistance of conflict-free counsel "throughout every . . . stage of available judicial proceedings . . . including all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures." 18 U.S.C. § 3599(e).

The plain language of the statute contemplates robust post-conviction representation continuing until ultimate resolution. "Congress' provision of a right to counsel . . . reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." *McFarland v. Scott*, 512 U.S. 849, 855 (1994) (discussing § 3599's predecessor statute, 21 U.S.C. §

848(q)). Section 3599's guarantee of quality representation extends to *all* available judicial proceedings, including "subsequent federal and state proceedings," *Wilkins v. Davis*, 832 F.3d 547, 557 (5th Cir. 2016), and pleas for executive clemency, *Harbison v. Bell*, 556 U.S. 180, 194 (2009).

In cases where an execution date is set, the Supreme Court and Fifth Circuit have held that the right to meaningful assistance of independent counsel is so weighty that it trumps the State's interest in a speedy execution.

In *McFarland v. Scott*, the Supreme Court held that a stay of execution was warranted to give meaningful effect to a petitioner's right to the assistance of counsel, even where the petitioner had no pending proceeding raising a constitutional claim. 512 U.S. at 857. McFarland sought the appointment of counsel in federal court just five days before his scheduled execution. On the day of his scheduled execution, the Supreme Court issued a stay. *Id*. The Court held that the federal courts have authority to stay executions even absent a pending habeas proceeding, *id.*, saying:

> [T]he right to counsel necessarily includes a right for that counsel to meaningfully research and present a defendant's habeas claims. Where this opportunity is not afforded, "[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper."

*Id.* at 858 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 889 (1983)) (alterations in original). The "appointment [of counsel] would have been meaningless unless McFarland's execution also was stayed." *Id.* at 857; *In re Hearn*, 376 F.3d 447, 457 (5th Cir.) ("[T]he pre-application appointment of counsel alone, without the time to adequately develop the facts and brief the claims, renders the statutory guarantee of counsel an empty promise."), *decision clarified on denial of reh'g*, 389 F.3d 122 (5th Cir. 2004).

McFarland applies with equal force when counsel was appointed *after* initial habeas proceedings have concluded. In *Christeson v. Roper*, the Supreme Court granted a stay of execution just to consider whether the lower court had denied Christeson his right to receive the meaningful assistance of conflict-free counsel in post-judgment proceedings. *See* 135 S. Ct. at 892. The Supreme Court acknowledged that the petitioner was unlikely to succeed in ultimately obtaining review of his federal habeas petition by means of a motion to re-open judgment under Federal Rule of Civil Procedure 60(b), yet granted the stay nonetheless. *Id.* at 895 (noting petitioner "faces a host of procedural obstacles").

Likewise, the Fifth Circuit has repeatedly issued or affirmed stays of execution to allow § 3599 counsel to pursue "all available post-conviction process" and other remedies, 18 U.S.C. § 3599(e), even though initial habeas proceedings have

concluded. *See In re Hearn*, 376 F.3d at 457-58 (granting a stay of execution to allow petitioner to develop facts and prepare application to file successor petition raising newly available claim under *Atkins v. Virginia*, 536 U.S. 304 (2002)); *Battaglia v. Stephens*, 824 F.3d 470, 475 (5th Cir. 2016) (reversing denial of motion for appointment of § 3599 counsel and issuing stay of execution); *Ruiz v. Quarterman*, 504 F.3d 523, 524 (5th Cir. 2007) (granting stay of execution on motion for relief from judgment); *Panetti v. Stephens*, 586 F. App'x 163, 164 (5th Cir. 2014) (issuing stay to consider district court's denial of motion for § 3599 counsel); *Ramirez v. Davis*, 675 F. App'x 478, 479 (5th Cir. 2017), *affirming stay*, *Ramirez v. Davis*, No. 12-cv-410 (S.D. Tex. Jan. 31, 2017) (ECF No. 48); *Gutierrez v. Davis*, No. 18-70028 (5th Cir. Sept. 10, 2018) *denying motion to vacate stay*, *Gutierrez v. Davis*, No. 1:09-cv-22 (S.D. Tex. Aug. 22, 2018) (issuing stay following appointment of § 3599 counsel).

This case is squarely controlled by the Fifth Circuit's leading decision in *Battaglia* where the Fifth Circuit reversed the district court's denial of Battaglia's motion for the appointment of counsel and granted him a stay of execution. 824 F.3d at 471. Battaglia filed his motion twenty days before his scheduled execution, seeking counsel to investigate the mere possibility of a claim that he was incompetent to be executed. *Id.* Battaglia already had counsel appointed under § 3599, but that attorney was incapable of representing him as § 3599 counsel: his

counsel incorrectly "believe[d] that his representation d[id] not extend to state competency proceedings." *Id.* at 474. The Fifth Circuit found counsel's appointment did extend that far, and Mr. Battaglia had been "abandoned" for purposes of state competency proceedings. *Id.*

Addressing Battaglia's motion for a stay of execution, the Fifth Circuit noted, "[O]nce a capital defendant invokes his § 3599 right, a federal court also has jurisdiction under [28 U.S.C.] § 2251 to enter a stay of execution to make the defendant's § 3599 right effective."[7] *Id.* at 475 (internal citation and quotation omitted). The Fifth Circuit entered the stay. "In our view, it would be improper to approve his execution before his newly appointed counsel had time to develop his *Ford* claim. A stay is needed to make Battaglia's right to counsel meaningful." *Id.*

Mr. Jennings—like Battaglia—seeks avenues to relief from his death sentence that are contemplated by § 3599(e): "all available post-conviction process, together with applications for stays of execution and other appropriate motions and procedures, and . . . clemency." 18 U.S.C. § 3599(e). Mr. Jennings—like Battaglia—is represented by counsel appointed under § 3599, but that counsel was unwilling (in

---

[7] 28 U.S.C. § 2251(a)(3) provides that a court "that would have jurisdiction to entertain a habeas corpus application" may stay execution of the death sentence for up to ninety days from the appointment of § 3599 counsel. Section 2251(a)(1) indefinitely extends the Court's power to grant a stay once an application has been filed.

Battaglia's case) or unable (conflicted counsel in this case) to pursue the relief necessary at this stage of the litigation.

Finally, Mr. Jennings has—like Battaglia had—an imminent execution date that, if enforced, would prevent new counsel from "meaningfully investigat[ing] the factual bases" for relief. *Battaglia*, 824 F.3d at 472. Because "the right to counsel necessarily includes a right for that counsel meaningfully to research and present" claims for relief, *McFarland*, 512 U.S. at 858, "[a] stay is needed to make [Mr. Jennings]'s right to counsel meaningful," *Battaglia*, 824 F.3d at 475.

Therefore, a stay would be an authorized and appropriate measure to ensure Mr. Jennings's conflict-free counsel may perform the duties for which they were appointed.

In addition to the power recognized under § 2251(a)(3) in *Battaglia*, the All Writs Act provides this Court the power to issue any orders, including injunctions, to preserve its jurisdiction. 28 U.S.C. § 1651(a) (federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."). This provision gives district courts jurisdiction to enjoin state court proceedings. *See Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) (upholding district court injunction of prospective state court proceedings under All Writs Act). The Supreme Court has also issued stays of execution to

preserve the courts' jurisdiction to conduct habeas proceedings once

they are initiated. *See, e.g.*, *Lenhard v. Wolff*, 443 U.S. 1306 (1979) (Rehnquist,

Circuit Justice, in chambers) (relying on All Writs Acts in granting temporary stay of

execution, in apparent absence of *certiorari* petition); *Edwards v. New York*, 76 S. Ct.

538 (1956) (Harlan, Circuit Justice, in chambers) (similar). This Court may use this

residual authority if 28 U.S.C. §2251(a) is not available.

CONCLUSION

For the foregoing reasons, Mr. Jennings respectfully requests that this Court

stay his execution to give effect to his right to the meaningful representation

guaranteed by 18 U.S.C. § 3599.

Respectfully submitted,

/S/ Edward Mallett
EDWARD MALLETT
Texas State Bar 12863000
Federal Bar 442
Mallett Saper, LLP
4306 Yoakum Blvd., Suite 400
Houston, Texas 77006
Tel: (713) 236-1900
Facsimile: (713) 228-0321
edward@msblawyers.com

/S/ Joshua Freiman
JOSHUA FREIMAN*
NY Bar No. 5353545
Assistant Federal Public Defender
TIVON SCHARDL
Supervising Assistant Federal Public Defender
Fla. Bar No. 73016
Federal Defender Office
Capital Habeas Unit
504 Lavaca Street, Suite 960
Austin, TX 78701
joshua_freiman@fd.org
Tel.: 512-916-5025
Fax: 512-916-5035

December 21, 2018

---

\* Pending *pro hac vice* application.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), counsel for Petitioner has conferred with Ellen Stewart-Klein, counsel for Respondent, and who is authorized to represent that Respondent opposes the relief sought in this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of December 2018, I electronically filed the foregoing Motion for a Stay of Execution with the Clerk of Court by using the CM/ECF system, which will send notification of such filing to the following:

> Ellen Stewart-Klein
> Assistant Attorney General
> 300 W 15th St
> 8th Floor
> Austin, TX 78701
> 512-936-1400
> Email: ellen.stewart-klein@oag.texas.gov

*/s/ Edward Mallett*
Edward Mallett