_70,911_



Appellate Cause No. 70-911


In The Court of Criminal Appeals For The
State of Texas
At Austin


ROBERT MITCHELL JENNINGS, Appellant


vs.


THE STATE OF TEXAS, Appellee


On Appeal from the 208th District Court of
Harris County, Texas
Trial Court Cause No. 506814

---

Brief for Appellant

---

Connie B. Williams
1314 Texas Ave., Suite 1710
Houston, Texas 77002
(713) 225-3700
TBA #21521500

ATTORNEY FOR APPELLANT

FILED IN
COURT OF CRIMINAL APPEALS

FEB 28 1992

Thomas Lowe, Clerk

# TABLE OF CONTENTS

SUBJECT                                                    PAGE

Statement Regarding Oral Argument                          A-3

Names and Addresses of All Parties                         A-4

Index of Authorities                                       A-5

Preliminary Statement                                      A-8

Appellant's Points of Error                                2

Point of Error One Restated                                4

Point of Error Two Restated                                12

Point of Error Three Restated                              17

Point of Error Four Restated                               21

Point of Error Five Restated                               24

Point of Error Six Restated                                28

Point of Error Seven Restated                              30

Point of Error Eight Restated                              32

Point of Error Nine Restated                               35

Point of Error Ten Restated                                38

Point of Error Eleven Restated                             42

Point of Error Twelve Restated                             45

Prayer For Relief                                          48

Certificate of Service                                     49

## STATEMENT REGARDING ORAL ARGUMENT

The undersigned counsel for the Appellant respectfully requests oral argument on these issues.

_____
Connie B. Williams

# NAMES AND ADDRESSES OF ALL PARTIES

Appellant                          Robert Mitchell Jennings

Attorney for Appellant             Connie B. Williams
                                   1314 Texas Ave., Suite 1710
                                   Houston, Texas 77002
                                   (713) 225-3700


Appellee                           State of Texas

Attorney for Appellee              John B. Holmes,
                                   Harris County District Attorney
                                   201 Fannin
                                   Houston, Texas 77002

A- 4

## INDEX OF AUTHORITIES

| CASES | PAGE |
|---|---|
| Allridge v. State, (Tex. Crim. App., Nov. 13, 1991, not yet reported). | 10 |
| Allridge v. State, 762 S.W.2d 146 (Tex. Cim. App. 1988). | 46 |
| Barrington v. State, 594 S.W.2d 88 (Tex. Crim. App. 1980). | 33 |
| Bell v. Ohio, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010. | 43 |
| Bravo v. State, 627 S.W.2d 152 (Tex. Crim. App. 1982). | 27 |
| Broussard v. State, 594 S.W.2d 90 (Tex. Crim. App. 1974). | 33 |
| Burkett v. State, 516 S.W.2d 147 (Tex. Crim. App. 1974). | 11 |
| Burks v. United States, 437 U.S.1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). | 29 |
| Carlsen v. State, 685 S.W.2d 444 (Tex. Crim. App. 1983). | 27 |
| Cumbo v. State, 760 S.W.2d 251 (Tex. Crim. App. 1988). | 14 |
| Duhamel v. State, 717 S.W.2d 80 (Tex. Crim. App. 1986). | 29 |
| Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). | 43,46 |
| Ex parte Ellis, 810 S.W.2d 208 (Tex. Crim. App. 1991). | 43 |
| Ex parte Rogers, 819 S.W.2d 533 (Tex. Crim. App. 1991). | 43 |
| Gardner v. State, 777 S.W.2d 709 (Tex. Crim. App. 1987). | 14 |
| Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 51 L.Ed. 2d 15). | 29 |

A- 5

Horne v. State, 607 S.W.2d 556
   (Tex. Crim. App. 1980).         30

Jackson v. Virginia, 443 U.S. 307,
   99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979).     27,29

Lane v. State, 743 S.W.2d 617
   (Tex. Crim. App. 1987).         14

Lockett v. Ohio, 438 U.S. 586,
   98 S.Ct. 2954, 57 L.Ed. 2d 973 (1978).     42,43,45

Manson v. Brathwaite, 432 U.S. 98,
   97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).     36

Martinez v. State, 763 S.W.2d 413
   (Tex. Crim. App. 1988).         14

McCoy v. State, 713 S.W.2d 940
   (Tex. Crim. App. 1986).         9

Montemayor v. State, 543 S.W.2d 93
   (Tex. Crim. App. 1976).         30

Morrow v. State, 753 S.W.2d 372
   (Tex. Crim. App. 1988).         14

Munguia v. State, 603 S.W.2d 876
   (Tex. Crim. App. 1980).         36

Neil v. Biggers, 409 U.s. 188, 93 S.Ct. 375,
   34 L.Ed.2d 401 (1972).         36.37

Penry v. Lynaugh, 492 U.s. 302,
   109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).     45.47

Pierce v. State, 604 S.W.2d 185
   (Tex. Crim. App. 1980).         10,22

Sanne v. State, 609 S.W.2d 762
   (Tex. Crim. App. 1980).         19,20

Skipper v. South Carolina,
   106 S.Ct. 1669 (1986).         46

Smith v. State, 703 S.W.2d 641
   (Tex. Crim. App. 1985).         46

Smith v. State, 573 S.W.2d 763
   (Tex. Crim.App. 1978).         22

Venegas v. State, 660 S.W.2d 547
(Tex. App.--San Antonio, 1983, no pet.)     30

Wainwright v. Witt, 469 U.S.412,
105 S.Ct. 844, 88 L.Ed. 2d 841 (1985).     9

Wyle v. State, 777 S.W.2d 709
(Tex. Crim. App. 1989).     23


Statutes

V.A.C.C.P., Article 21.24     40

V.A.C.C.P., Article 35.13     19

V.A.C.C.P., Article 37.071     8

Texas Penal Code, Sec. 6.03(b)     24

Texas Penal Code, Sec. 9.31     30

Texas Penal Code, Sec. 29.02(a)(2)     28

Constitutions

United States Constitution, 14th Amendment     33,37,41

United States Constitution, 5th Amendment     41

Texas Constitution, Art. 1, Sec. 19     18

## PRELIMINARY STATEMENT

The appellant, Robert Mitchell Jennings, was charged by indictment with capital murder (TR 10). Trial was before a jury, which found the appellant guilty (TR 469) and which further found in the affirmative to Special Issues One, Two, and Three (TR 480-482). Punishment was assessed at death (TR 487). This case is before this Court pursuant to article 4.04, Section 2, V.A.C.C.P.

Appellate Cause No.70-911

In The Court of Appeals For The
State of Texas
At
Austin

Robert Mitchell Jennings, Appellant

vs.

The State of Texas, Appellee

On Appeal from the 208th District Court of
Harris County, Texas
Trial Court Cause No. 506814

---

## Brief for Appellant

---

TO THE HONORABLE JUSTICES OF SAID COURT:

COMES NOW ROBERT MITCHELL JENNINGS, hereinafter referred to as
the Appellant, and respectfully submits this his brief specifying
error of which Appellant complains on appeal pursuant to rule 74(d)
of the Texas Rules of Appellate Procedure and would show through
his attorney the following points of error on which Appellant
wishes to complain on appeal.

# POINTS OF ERROR

## POINT OF ERROR ONE

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE OF THE PROSPECTIVE JUROR GLYNDA F. CUMBY. (P. 4)

## POINT OF ERROR TWO

THE TRIAL COURT ERRED IN DENYING APPELLANT'S CHALLENGE FOR CAUSE OF VENIREMAN MARKOWSKI. (P. 12)

## POINT OF ERROR THREE

APPELLANT WAS DENIED HIS RIGHTS OF EQUAL PROTECTION AND DUE PROCESS UNDER THE TEXAS AND UNITED STATES CONSTITUTIONS IN THAT THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR ADDITIONAL PEREMPTORY STRIKES AFTER EXCUSING A JUROR WHO HAD PREVIOUSLY BEEN SWORN AND ACCEPTED AS A PANEL MEMBER. (P. 17)

## POINT OF ERROR FOUR

THE TRIAL COURT ERRED IN DENYING APPELLANT'S CHALLENGE FOR CAUSE OF VENIREPERSON SCHULER. (P. 21).

## POINT OF ERROR FIVE

THE EVIDENCE IS INSUFFICIENT TO PROVE THAT THE APPELLANT KNEW THE COMPLAINANT WAS A POLICE OFFICER. (P. 24)

## POINT OF ERROR SIX

THE EVIDENCE IS INSUFFICIENT TO PROVE THAT THE APPELLANT COMMITTED MURDER DURING THE COURSE OF A ROBBERY. (P. 28).

## POINT OF ERROR SEVEN

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUESTED CHARGE ON SELF-DEFENSE, BY WAY OF APPARENT DANGER. (P. 30).

## POINT OF ERROR EIGHT

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO EXAMINE THE JURY CONCERNING THE READING OF NEWSPAPER ACCOUNTS OF THE TRIAL DURING THE GUILT/INNOCENCE STAGE OF TRIAL. (P. 32)

## POINT OF ERROR NINE

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS THE IDENTIFICATION OF THE APPELLANT BY WITNESS OVERHOLT. (P. 35)

## POINT OF ERROR TEN

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO ALLOW THE JURY TO ANSWER THE VERDICT SHEET IN A GENERAL RATHER THAN SPECIFIC MANNER. (P. 38).

## POINT OF ERROR ELEVEN

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO INCLUDE AN INSTRUCTION THAT THE APPELLANT'S ALCOHOL ABUSE COULD BE CONSIDERED AS A MITIGATING FACT AS TO PUNISHMENT. (P. 42)

## POINT OF ERROR TWELVE

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR MISTRIAL IN THAT DURING VOIR DIRE JURORS WERE NOT QUESTIONED REGARDING WHETHER THEY WOULD BE ABLE TO USE THE REASONABLE MORAL RESPONSE IN ASSESSING THE DEATH PENALTY. (P. 45)

## POINT OF ERROR ONE

THE TRIAL COURT ERRED IN GRANTING THE STATE'S CHALLENGE FOR CAUSE OF THE PROSPECTIVE JUROR GLYNDA F. CUMBY.

### ARGUMENT AND AUTHORITIES

During voir dire of the venire panel, Glynda F. Cumby, was called as a prospective juror. During the State's questioning, the Assistant District Attorney asked Ms. Cumby whether she had an opinion as to whether the deceased, Elston Howard was dead and that the was a police officer. Ms. Cumby answered, "Yes" and the State challenged her for cause (SF XVIII, [Book 20], Voir Dire Examination, p. 3768).

Defense counsel then questioned Ms. Cumby as to whether she would require proof on the issue of whether the deceased was a police officer and whether he was dead. She answered that she would since "we haven't started yet." Defense counsel passed the witness, at which time the Court stated to Ms. Cumby, "...Neither this Court nor either attorney has stated to you any fact in this case. We have each indicated allegations that are made." The Court then denied the State's motion (SF XVIII, [Book 20], Voir Dire Examination, p. 3771).

The State's next line of questioning pertained to the prospective juror's answers to the three special issue questions posed to jurors during the punishment phase of trial. The

4

following occurred concerning Special Issue Three.

Q [Prosecutor]:     So I take it then you can listen to the evidence and answer Special Issue Number 3 either yes or no; is that correct?

A [Prospective Juror]: I--I--I don't think I understand what circumstances are that there could be a reason.

Q: Okay.  So I take it then that in each and every case that you would answer Special Issue Number 3 yes; is that correct?

A: Yes.

Q: Okay.  Do I understand you now?

A: (Smiling.)

Q: All right.

A: I'm saying under those circumstances I can't see that there ever would be a reason that would be good enough.

Q: So I take it then that your answer to Special Issue Number 3 would always be yes; is that correct?

A: Under those circumstances.

Q: Okay.  Well under any circumstances that you can envision; is that correct?

A: Okay.  Not that I know of at this point.

Q: Well can you ever imagine--can you imagine any circumstances wherein it would be reasonable to kill--a Defendant to kill someone in response to provocation?

    THE COURT:  Please answer out, ma'am.

A: Uh, no.   I--I'm envisioning--I'm thinking about somebody goes into a store would be a horror and the grocery clerk pulled out a gun--

Q: You know that it could be anything you want to think of.  I take it then--

A: But my thought is if he went in there to commit the

5

robbery, that that's--that that person was justified in doing that.

MR. LAMBRIGHT [Prosecutor]: We would make a motion, Your Honor, based on Special Issue Number 3.

(SF XVIII [Book 20], Voir Dire Examination, pp. 3776-3778).

Defense counsel then questioned Ms. Cumby as to whether she could envision a case where Special Issue Number 3 could be answered either way, to which she responded that she could. He then passed the venireman (SF XVIII [Book 20, Voir Dire Examination, p. 3782).

The Court then questioned Ms. Cumby.

THE COURT: Miss Cumby, I want to be sure that I understand your response to this matter. Are you telling the Court that you are able to envision a set of circumstances that would allow you to answer Special Issue Number 3 no, after having found someone guilty of the offense of capital murder?

THE WITNESS: I'm saying that circumstances could make a difference in a yes or a no. When--

THE COURT: Could you --

THE WITNESS: --I was asked--

THE COURT: Could you under any circumstances answer that question no?

THE WITNESS: Under any circumstances?

THE COURT: Under any circumstances you can think of.

THE WITNESS: No. Can I say it the way I'm thinking?

THE COURT: We'll try it ma'am. Go on.

THE WITNESS: When you presented me with a case, you presented me with something very specific and I saw it that way and under those circumstances I couldn't see a way that it would be admissible, that it would be okay,

6

that it would be--that there could be a justification.

But when you presented me with a circumstance, not even thinking about the twelve bullets but, you see, just see in my own mind if I thought there was a possibility of a circumstance where that had to be considered, my answer is yes.

THE COURT: Your--your--your statement really doesn't clear it up.

Now you can think of a set of circumstances, regardless of what--uh--examples have been given you already, any set of circumstances in your mind that will allow you to answer Special Issue Number 3 no. Can you think of any set of circumstances?

THE WITNESS: Can I think of any set of circumstances? No.

THE COURT: Now is this your final answer, Miss Cumby?

THE WITNESS: I am very confused by this Issue and I'm here and I'm there and I'm very confused by what's being asked of me.

I would like to answer yes or no. I see something, you tell me something (indicating), you tell me something (indicating), and I'm not sure any more what the question is.

THE COURT: I've asked you to set aside all of the examples that have been give you. Just ignore them. Just forget them. I'm now asking you whether there is any set of circumstances that you can think of where you have found a person guilty of the offense of capital murder that you can answer Special Issue Number 3 no?

THE WITNESS: No.

THE COURT: Granted.

(SF XVIII [Book 20], pp. 3782-3785). Immediately after Ms. Cumby was excused, Defense Counsel objected to the Court's granting the State the challenge for cause for two reasons--(1) that the State had requested the challenge for cause on a ground permitted only to be raised by the defense; and (2) that the question, "Can you think

7

of some circumstances under which you would answer the Issue to that Question no?" was improper in that the question should have been, "Can you think of any circumstances under which you would answer it either yes or no?" The Court noted defense counsel's objections, but overruled them (SF XVIII [Book 20], pp. 3785-3786).

Article 35.16(c)(2) of the Texas Code of Criminal Procedure provides that the defense may challenge for cause any venireperson who has a bias or prejudice against any of the law applicable to the case which the defense is entitled to rely. In contrast, Article 35.16(b) provides the reasons for which the State may challenge for cause.

In the "Special Commentary" section of Article 35.16, the Honorable John F. Onion, Jr. wrote:

> This article has been separated into causes for which either the State or defendant may challenge (Sec. a); for which only the State may challenge (Sec. b); and for which only defendant may challenge (Sec. c). For example, the State is now the only party who may challenge a prospective juror on grounds he has conscientious scruples against the infliction of the death penalty in a capital case where State is seeking that penalty...

An individual adjudged guilty of capital murder is to be punished by death or life imprisonment as provided in V.T.C.A., Penal Code, sec. 12.31. The penalty to be assessed is determined by the jury's answers to the special issues submitted to the jury in a capital murder case under Article 37.071 V.A.C.C.P.

In Wainright v. Witt 469 U.S. 412, 105 S.Ct. 844, 88 L.Ed.2d 841 (1985), the Supreme Court held that the proper test for excusing a potential juror is whether the juror's views on capital

8

punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." 469 U.S. at 424, 105 S.Ct. at 852, 83 L.Ed.2d at 851-852.

In reviewing whether a trial court erred in improperly excluding a potential juror, the reviewing court must examine the entire voir dire examination of that potential juror to determine whether he was improperly excluded, giving deference to the trial judge who was in a position to see and hear the juror. McCoy v. State, 713 S.W.2d 940 (Tex. Crim. App. 1986).

In the instant case, the State challenged this juror for cause. This challenge was based only on a cause accorded to the defense. Appellant was deprived of initiating a challenge for cause based on a defense only the appellant could raise. Procedurally, the State could then rehabilitate the juror. However, in this instance, the State, by initiating the incorrect challenge, was given the opportunity to avoid rehabilitating the witness. The court clearly erred in denying appellant's motion.

The court also erred in denying appellant's motion in posing an unclear question to determine whether the potential juror could consider all the circumstances. In the instant case, the potential juror, when given specific circumstances answered yes and one instance and no in another. She wavered only when the trial court asked her specifically whether she could think of any circumstance in which her answer would be "no." She tried to explain to the trial court that under each set of facts, she was able to answer

9

either yes or no. Had the trial court posed his question differently, her final answer would have probably been different. Alternatively, had the trial court posed specific circumstances, the potential juror could have done as before--answer specifically yes or no.

Immediately after the trial court posed the improper question, to which Ms. Cumby answered, "No," the Court granted the State's challenge. In <u>Allridge v. State</u>, (Tex. Crim. App., November 13, 1991, not yet published), this Court wrote,

"...an attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. 'It is improper to inquire how a venireman (sic) would respond to particular circumstances as presented in a hypothetical question.' (Citation omitted). It would also be improper to ask an open-ended question designed so the venireperson could set the hypothetical parameters for their for their decision-making. In the instant case, appellant's counsel requested Beauchamp to devise a set of facts and to speculate regarding what decision he would make in that situation. This was not relevant to the issue of whether Beauchamp could fairly consider the full range of punishment in the instant case based solely upon the facts proven at trial.

In the instant case, the trial court attempted to bind the prospective juror to a verdict based on asking an open-ended question designed so the venireperson could set the hypothetical parameters for her decision-making. In doing so, the trial court erred.

A defendant is entitled to be tried by jurors who believe in the full range of punishment authorized by law. <u>Pierce v. State</u>, 604 S.W.2d 185 (Tex. Crim. App. 1980). In this case, Ms. Cumby demonstrated that in specific circumstances, she would consider the full range of punishment. Were it not for the trial court's

10

unclear questioning near the end of voir dire, Ms. Cumby qualified as a proper juror in this case.

When an appellant challenges the trial court's denial of a challenge for cause or exclusion of a qualified venireman, the appellant may show harm by showing (1) appellant exhausted his peremptory challenges; (2) appellant's request for additional peremptory challenges were denied; (3) appellant's showing the seating of a juror upon whom the appellant would have exercised peremptory challenge. Burkett v. State, 516 S.W.2d 147 (Tex. Crim. App. 1974).

In the instant case, appellant exhausted his peremptory challenges. Appellant requested additional peremptory challenges which were denied (SF XVIII [Book 20], pp. 3934-3936; SF XXI [Book 23], pp. 4371-4373; See argument and authorities under points of error two and three). Finally, appellant was forced to accept an objectionable juror upon whom he would have exercised a peremptory challenge: Eileen Schuler (SF XXV [Book 27], p. 5577, 5581, 5610, 5613, and 5625 where Schuler's testimony exhibited a pro-death penalty attitude towards an accused.

Appellant asks this court to sustain point of error one, reverse, and remand for a new trial.

POINT OF ERROR TWO


THE TRIAL COURT ERRED IN DENYING APPELLANT'S CHALLENGE FOR CAUSE OF VENIREMAN MARKOWSKI.

ARGUMENT AND AUTHORITIES

During the State's voir dire of venireman Richard Donald Markowski the State was allowed to read the indictment to Markowski over the objection of appellant (SF XVIII [Book 20], p. 3875). Later, the State was allowed to state the following hypothetical to Markowski over the objection of appellant.

> Q [Prosecutor]:...Uh, I like to think of it in terms of degrees. Like when you get up in the morning--uh--you may have no intent or desire to run a red light on the way to work but let's say you're driving down the road and the light turns red and for whatever reason, it's your conscious objective or desire to engage in conduct that would push down the accelerator all the way, look, make sure there aren't any cars coming or kids crossing the street, and run a red light.
>
> Even though you didn't have any intent to do it when you got up that morning and ate your breakfast, you still intended to do it when you went through the intersection because it was still your conscious objective or desire. Even though it only took a split second, because it was your conscious objective, you put your foot down, looked both ways and you run the red light because that's what you want to do, because you don't want to be late to work.
>
> But if you add more thought process to that act, you could do so. Let's assume before you do put your foot down on the accelerator and look both ways, "Gosh, I was late yesterday and I'm gonna be late today and I can hear the train down the road and if I get caught behind that train, I'll be even later." Then you put your foot down on the accelerator.

Do you see how you can take an intentional act and add more thought process to it?  How much--

At that point appellant objected, and the objection was overruled (SF XVIII [Book 20], pp. 3892-3893).

At another point Markowski stated that he believed that the deceased was a police officer and that he was dead.  Appellant challenged for cause based on that response.  After examination by the State, appellant's challenge was denied (SF XVIII [Book 20], pp. 3924, 3929).

Still later, the State voiced an acceptance of this juror.  Appellant used a peremptory challenge against Markowski then noted objections as to why the Court should have granted the appellant's challenge based on three grounds: (1) that the prosecutor was allowed to read the indictment to the venireman; (2) that the Prosecutor was allowed to pose hypotheticals to the venireman which allegedly demonstrated intentional and deliberate conduct; and (3) by doing the foregoing, it allowed the venireman to conclude that the complainant was a police officer and that he was dead.  Appellant thereafter requested an additional peremptory challenge, which the Court denied (SF XVIII [Book 20], pp. 3934-3936).

The trial court erred in allowing the State to pose hypotheticals allegedly illustrating the difference between intentional and deliberate conduct.  Generally, in a capital murder voir dire, either defense counsel or the State will attempt to give hypotheticals distinguishing between murder committed intentionally and murder committed deliberately.  See eg. Wyle v. State, 777 S.W.2d 709 (Tex. Crim. App. 1989); Martinez v. State, 763 S.W.2d

13

413 (Tex. Crim. App. 1988); <u>Cumbo v. State</u>, 760 S.W.2d 251 (Tex. Crim. App. 1988). However, this court has held that the posing of improper hypotheticals to illustrate the difference between intentional and deliberate murder constitutes reversible error. See <u>Martinez</u>, 763 S.W.2d 413 (Tex. Crim. App. 1988); <u>Lane v. State</u>, 743 S.W.2d 617 (Tex. Crim. App. 1987); <u>Gardner v. State</u>, 730 S.W.2d 675 (Tex. Crim. App. 1987); <u>Morrow v. State</u>, 753 S.W.2d 372 (Tex. Crim. App. 1988).

In this case the hypothetical posed by the State was improper in that it failed to illustrate the difference between murder committed intentionally and murder committed deliberately. The hypothetical posed no relationship to the issues in the instant case.

In <u>Lane, supra</u>, the prosecutor posed the following hypothetical:

> Q. Okay. Now, the Judge is going to tell you what intentional means. She is going yo give you the definition of that word. It's your conscious objective or desire to engage in the conduct or cause the result. That's what you intend. That's the definition. Now, follow with me here and let me show you how this questions asks you something different than, Is the defendant guilty.
>
> Let's say I go in to rob Mr. Lewis in a store and while I'm in there I pull a gun and tell him to give me the money, and he is not moving fast enough for me, so I take the gun and fire a shot into the ceiling. I intentionally fire a shot into the ceiling. It is my conscious objective or desire to engage in the conduct of pulling the trigger and firing that gun. I intentionally fire a shot. It strikes something in the ceiling, ricochets and hits him in the head and kills him. Do you see how my intention, firing that gun, led to his death? If I hadn't pulled the trigger, obviously he wouldn't have died. With me so far?

A. Yes.

(Defense Counsel objects and objection is overruled)
* * *
Q. (State's Counsel)--because my intentional act caused his death during a robbery. Are you with me? Okay. So you, Chance, and the other 11 go back there and deliberate your verdict and come back in the courtroom and say, 'Mr. Scott is guilty of capital murder; Rider is guilty of capital murder.'

Now, you get Sentencing Issue No.1 after you found me guilty. It says, Was the conduct of the defendant, me, was my conduct that caused his death done deliberately and with a reasonable expectation that he die? In other words, did I deliberately cause his death and did I do that act with a reasonable expectation that he die? I think you can see there the answer would be no. You see how that is asking you different things?

A. Yes.

Lane, 743 S.W.2d at 626. This Court held that the prosecutor's hypothetical presented facts which did not constitute capital murder. The court stated, "At the most, the facts of the State's hypothetical constitute only murder, as it is defined in V>T.C.A., Penal Code Sec. 19.02(a)(3). This hypothetical was a blatant misstatement of the law of capital murder." Id. at 627.

Likewise, in Gardner, supra, this Court held that the prosecutor's hypothetical "utterly fail[ed] to illustrate the intended point," and reversed the defendant's conviction. Gardner, 730 S.W. 2d at 687.

In the instant case, the hypothetical had absolutely nothing to do with the commission of capital murder and should not have been allowed. Appellant's objection should have been sustained.

Appellant asks this court to sustain point of error two and reverse and remand for a new trial.

15

## POINT OF ERROR THREE

APPELLANT WAS DENIED HIS RIGHTS OF EQUAL PROTECTION AND DUE PROCESS UNDER THE TEXAS AND UNITED STATES CONSTITUTIONS IN THAT THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST FOR ADDITIONAL PEREMPTORY STRIKES AFTER EXCUSING A JUROR WHO HAD PREVIOUSLY BEEN SWORN AND ACCEPTED AS A PANEL MEMBER.

### ARGUMENT AND AUTHORITIES

Kay Stringfield, a prospective juror, had been questioned on voir dire, selected as a panel member, and sworn in (SF VI [Book 8], pp. 1278-1345). Before jury selection process had been completed, Ms. Stringfield appeared before the trial court and testified that since her last appearance, she had since been charged with theft. The trial court found Ms. Stringfield must be excused from serving as a juror on this panel (SF XX [Book 22], pp. 4230-4234).

Appellant then requested the court grant him two additional peremptory challenges to put him back in the posture or near the posture he would have been had the juror been excused earlier. As an alternative, appellant requested the court to excuse all jurors since Ms. Stringfield. Appellant pointed out that one juror, Miss Susan Spence, was accepted by him after much debate. She was accepted based upon Miss Stringfield's being a part of the jury panel. The trial court denied appellant's request (SF XXI [Book

17

23], pp. 4371-4373).

The United State Constitution, 14th Amendment, section 1 provides in pertinent part:

> ...No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of its laws.

In the instant case, appellant was being denied equal protection and due process in that he was forced to select persons for the jury using a process dictated by Article 35.15. This process does not allow appellant to make an informed choice of jury members using the panel as a whole, but requires that appellant selects jury members on an individual basis. Appellant could make a better informed decision if allowed to examine each prospective juror, then select the panel as a whole.

In the alternative, because this process may not be feasible, appellant should be granted the opportunity to exercise an additional peremptory if it is shown that a juror previously selected and sworn later becomes disqualified to sit on the panel. This would ensure appellant's rights to due process and equal protection as afforded under the United State Constitution.

Additionally, appellant's rights to due process and equal protection as afforded under the Texas Constitution were violated. Texas Constitution, Art. 1, Sec. 19 provides in pertinent part: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by

the due course of the law of the land."

Because appellant has been granted these rights through both Constitutions, it is incumbent that this Court review the statue complained of by the appellant.

Article 35.13, V.A.C.C.P., provides:

> A juror held to be qualified shall be passed for acceptance or challenge first to the State and then to the defendant. Challenges to jurors are either peremptory or for cause.

Because of this statute, appellant was forced to exercise peremptory challenges at the time he individually voir dired a perspective juror, thus denying appellant the right to make an informed exercise of his peremptory challenges after examining the entire venire.

This very issue was raised in Sanne v. State, 609 S.W.2d 762 (Tex. Crim. App. 1980), but was overruled. The Court stated that the defendant had failed to show harm under the facts of his case. Specifically, the defendant had failed to show that he would have exercised his peremptory challenges differently, and that a jury he did not want was impaneled as a result of the procedure followed. Id. at p.767.

The Court then outlined two methods by which the defendant could have shown harm required to preserve the constitutional challenge for review. In the instant case, appellant has chosen the second method prescribed by the Court to show harm:

> On the other hand, a defendant may as Skillern did with respect to two veniremen, join the issue by declining to use a peremptory challenge to exclude a prospective juror while claiming he should have the right

19

to reserve the strike. In such a situation, the defendant must show that at the end of examining the venire, he made a retroactive request to exercise his peremptory challenges in the manner to which he claims he is entitled. In this was, the trial is accorded an opportunity to nullify any error stemming from adherence to the complained of procedure...

In the instant case, appellant has demonstrated harm by following the procedure outlined by the Court in <u>Sanne</u>.

Defense counsel informed the court that another juror, Susan Spence, was accepted only after much debate by the defense team to accept Spence due in part to juror Springfield's being selected as part of the jury panel. Because of this, appellant would have exercised his peremptory challenges differently. As a result, the make-up of the jury was then changed and appellant was thus forced in mid-stream to make adjustments in his jury selection process without being afforded the opportunity to exercise additional peremptory selections.

In the instant case, appellant chose to withhold using a peremptory challenge to exclude Spence when he should have had the right to reserve the strike. Upon being informed that Stringfield was not allowed to continue as a member of the jury panel, appellant made a request to be granted an additional peremptory challenge. The trial court was accorded the opportunity to nullify any error but declined to do so.

Appellant asks this Court to sustain point of error three and reverse and remand for a new trial.

# POINT OF ERROR FOUR

THE TRIAL COURT ERRED IN DENYING APPELLANT'S CHALLENGE FOR CAUSE OF VENIREPERSON SCHULER.

## ARGUMENT AND AUTHORITIES

During the State's voir dire of venireperson Eileen Schuler, appellant established that the prospective juror exhibited a bias against the appellant or any person accused of murder. Schuler commented:

> A [Witness]: Well, I strongly believe that--uh--there's just too much murder taking place and people are thinking they can get away with it. And, you know, the situation with the jails--uh--it's like I can go out and kill somebody and at least I can live.
>
> I feel for the victim. They lose their life and they don't get another chance so why should the murderer? (SF XXV [Book 27], p. 5577).

* * *

> Q [Defense Counsel]: Okay. You stated in response to your Questionnaire that the--uh--there should be an increase in sentences--in sentencing with regard to the death penalty. Uh, and I believe you stated, 'An eye-for-an-eye. They should be--they too should be murdered and sentenced to death,' with regard to people who have committed murder; is that correct?
>
> A [Witness]: (Nods head affirmatively.) (SF XXV [Book 27], p. 5581).

* * *

> Q [Defense Counsel]: Going directly to your Questionnaire, an item here that says, 'What would you change about the System if you could?' And that had reference to the Criminal Justice System. You said you would, 'increase sentencing to the death penalty.' (SF XXV [Book 27], p. 5610).

* * *

Q [Defense Counsel]: Okay. What I'm getting at, ma'am, do you believe that everybody that's found guilty of capital murder should get the death penalty?

A [Witness]: Yes.

Q: Okay. In each and every case where they're found guilty of the intentional killing of someone?

A: Yes. (SF XXV [Book 27], p. 5614.)

Appellant requested the court to excuse the venireperson on its own motion for two reasons--(1) that the State bombarded her with hypotheticals that would indicate the state of mind of deliberateness and intentional conduct would be tantamount to the same commitment; and (2) that the juror stated that she believed that anybody convicted of capital murder should get the death penalty, that there no person convicted of capital murder should get life imprisonment. Appellant also requested an additional peremptory challenge. The trial court denied both requests and Schuler was sworn in as a juror (SF XXV [Book 27], p. 5627).

This Court has held that a defendant is entitled to have jurors who believe in the full range of punishment. Pierce v. State, 604 S.W.2d 185 (Tex. Crim. App. 1980). Furthermore, this Court has also held that a trial court's overruling a challenge for cause was improper where the venireperson stated that he could not consider any punishment other than the death penalty for someone convicted of capital murder committed during a robbery. Id., at 187, 188.

In Smith v. State, 573 S.W.2d 763 (Tex. Crim. App. 1978), this Court held that although the venireperson said that he was willing to require the State to prove beyond a reasonable doubt the special

22

issues submitted during the punishment phase of trial, where the venireperson stated that he had strong convictions that the death penalty was the only punishment he would consider for a person guilty of capital murder, the trial court erred in failing to grant the defendant's challenge for cause. Id. at 766.

In denying appellant's request for additional peremptory challenges, the trial court denied appellant a mathematical chance of selecting jurors as prescribed. Appellant is allowed fifteen peremptory challenges to select twelve jurors. By selecting a juror, then having that juror disqualified, appellant is then forced to select thirteen jurors with the same allotted fifteen challenges. Mathematically speaking, an appellant is allowed to exercise 1.25 strikes per juror. If the court would have allocated 2 additional peremptory strikes to substitute for the juror Stringfield, Appellant would have been placed back in his original position. Appellant was harmed in that the State, in effect, was given one more peremptory challenge than the appellant. See Wyle v. State, 777 S.W.2d 709, 713 (Tex. Crim. App. 1989).

Appellant asks this Court to sustain point of error four and reverse and remand for a new trial.

POINT OF ERROR FIVE

THE EVIDENCE IS INSUFFICIENT TO PROVE THAT THE APPELLANT KNEW
THE COMPLAINANT WAS A POLICE OFFICER.

ARGUMENT AND AUTHORITIES

Appellant was charged by indictment with capital murder.  The
indictment provides in pertinent part that the appellant,

> did then and there unlawfully intentionally and knowingly
> cause the death of ELSTON HOWARD, hereafter styled the
> Complainant, a peace officer in the lawful discharge of
> an official duty, by shooting the Complainant with a
> deadly weapon, namely, a firearm, knowing at the time the
> Complainant was a peace officer.

(TR, p. 10).  V.T.C.A. Penal Code, Section 6.03(b) states that

> A person acts knowingly, or with knowledge, with respect
> to the nature of his conduct or to circumstances
> surrounding his conduct when he is aware of the nature of
> his conduct or that the circumstances exist.  A person
> acts knowingly, or with knowledge, with respect to a
> result of his conduct when he is aware that his conduct
> is reasonably certain to cause the result.

The evidence relied upon by the State to prove that the
appellant knew the complainant was a police officer consisted of
presenting testimony of why the complainant was in the bookstore,
describing what he was doing at the time the appellant entered the
bookstore, and describing the clothes he was wearing at the time of
the killing and robbery.

Officer Sistrunk testified that on July 19, 1988, he and his
partner, Officer Howard, were driving around making their rounds as
members of the Houston Police Department Vice Squad.  They were

"making arcade cases" in that they would enter a building in an undercover capacity, purchase admissions, view a movie, and if the movie was obscene, arrest the clerk if he did not have a permit to operate the arcade.   Howard was wearing civilian clothes: dress slacks, slippers, and a sports shirt (SF I, [Book 33], pp. 34-38.

They went to the Empire Bookstore where Sistrunk entered to view a movie.  Afterwards, Howard entered the bookstore.  The first time Sistrunk saw Howard, Howard was behind a display case standing beside the store clerk.  Howard was holding a booking blotter used to write paperwork for jail information, and was wearing a Raid Jacket.  The jacket was described as blue, with the words "Houston Police" printed across the front and back of the jacket (SF I, [Book 33], pp. 40, 75-80).

Officer Sistrunk left the bookstore and when he returned he observed a H.F.D. fire truck approaching the bookstore and heard a siren.  He did not observe the robbery or killing. (SF I, [Book 33], pp. 87-88).

Larry Overholt, the clerk at the Empire Bookstore, testified that Officer Howard was writing a citation when a robber entered the bookstore.  The robber shot Howard, then went around the magazine rack, came back, and robbed the store clerk (SF I, [Book 33], pp. 110-120).

During cross examination, Overholt testified that the view the robber had of Howard would have been of Howard's shoulders. There was no testimony that the complainant identified himself as

a police officer (SF I, [Book 33], p. 136). As a result, the only identification the robber would have had that Howard was a police officer, i.e., the words across the Raid Jacket, were not visible to the robber.

Ronald Ray Rogers, a person inside the bookstore at the time the robbery and killing occurred, testified that he was inside the video room at the time. He heard gunshots, but could not see the robber. He also could not say that at the time he saw Howard fall that he could identify Howard as a police officer (SF I, [Book 33], pp. 170-172).

Rogers also testified that it did not become apparent that Howard was an officer until after Rogers exited the video room, walked by Howard and noticed Howard's gun and holster on one of his legs and then saw the jacket. He said that he could see what Howard was wearing, but it did not register that Howard was a police officer (SF I, [Book 33, pp. 170, 178, 185).

In the instant case, the evidence did not show that the appellant knew that Howard was a police officer. Howard was not dressed in the H.P.D. uniform, did not identify himself as a police officer, was not standing in a manner that the appellant could have read the information on the police officer's jacket.

While there may be a strong suspicion that the appellant should have known Howard was a police officer, the evidence falls short of proving beyond a reasonable doubt that the appellant knew Howard was a police officer.

The standard of review when the sufficiency of the evidence is

considered is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S.307, 99 S.C.t.2781, 61 L.Ed.2d 560 (1979). The same standard is used in cases involving direct as well as circumstantial evidence. Carlsen v. State, 685 S.W.2d 444 (Tex. Crim. App. 1983).

In the instant case, the evidence falls short of proving that the appellant knew Howard was a police officer. Compare cases where the evidence was sufficient to show that the defendant knew the complainant was a police officer. In Bravo v. State, 627 S.W.2d 152 (Tex. Crim. App. 1982) where the deceased drove a county vehicle displaying a county sheriff's decals which was equipped with a two-way radio, siren and flashing red light. Appellant asks this court to find that the evidence was insufficient to support a finding that the appellant knew the complainant was a police officer, reverse his conviction, and enter an order of acquittal.

## POINT OF ERROR SIX

THE EVIDENCE IS INSUFFICIENT TO PROVE THAT THE APPELLANT COMMITTED MURDER DURING THE COURSE OF A ROBBERY.


## ARGUMENT AND AUTHORITIES

The indictment in this case alleged in part that the appellant, "while in the course of committing and attempting to commit the ROBBERY of LARRY OVERHOLT, intentionally cause the death of ELSTON HOWARD, hereafter styled the Complainant, by shooting the Complainant with a deadly weapon, namely, a firearm." (TR, p. 10).

Texas Penal Code Annotated, Section 29.02(a)(2) provides that a person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

The facts in this case do not support a finding that the appellant caused the death of the complainant while in the course of committing and attempting to commit the robbery of Larry Overholt. The testimony reflects that the robber entered the Empire Bookstore, saw the complainant, a struggle ensued, and the robber then shot the complainant. Afterwards, the robber then demanded money from the cash register and Overholt.

In reviewing an issue of insufficiency of the evidence to support a conviction, a reviewing court must review the evidence in the light most favorable to the jury's verdict and consider whether any rational trier of fact could have found the essential elements

of the offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); <u>Duhamel v. State</u>, 717 S.W.2d 80 (Tex. Crim. App. 1986).

In the instant case, the facts clearly show that the shooting occurred prior to the robbery. Therefore, the shooting and the robbery were two distinct acts and could not have occurred simultaneously. As a result, the evidence is insufficient to support the verdict.

Appellant asks this court to find that the evidence is insufficient to support a finding that the murder of the complainant occurred during the course of attempting to and committing the robbery of Overholt.

Appellant asks this court to sustain point of error six and enter an order of acquittal. <u>Burks v. United States</u>, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d1 (1978); <u>Greene v. Massey</u>, 437 U.S.19, 98 S.Ct.2151, 51 L.Ed.2d15 (1978).

## POINT OF ERROR SEVEN

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUESTED CHARGE ON SELF-DEFENSE, BY WAY OF APPARENT DANGER.

### ARGUMENT AND AUTHORITIES

At the conclusion of the guilt/innocence phase of trial, appellant requested the Court to charge the jury on the issue of self-defense, by way of apparent danger. The request was denied (SF IV, [Book 38] p. 865).

Texas Penal Code Annotated Section 9.31 (Vernon 1974) provides that, "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other other's use or attempted use of unlawful force."

In Venegas v State, 660 S.W.2d. 547 (Tex. App.--San Antonio 1983, no pet.) the defendant's conviction for attempted capital murder was reversed where the evidence showed that plain clothes policemen entered the defendant's home. In Montemayor v. State, 543 S.W.2d 93 (Tex. Crim. App. 1976), the defendant's conviction was reversed where the evidence showed that the defendant knew his assailant was a police officer, but the evidence showed he was entitled to a charge on self-defense.

A trial court errs in refusing to instruct the jury on the issue of self-defense when it is raised by the evidence. Horne v. State, 607 S.W.2d 556 (Tex. Crim. App. 1980).

In the instant case, the evidence showed that the appellant was not aware that the complainant was a police officer. It also showed that the appellant and the complainant scuffled. Appellant scuffled with the officer thinking that he was defending himself. Therefore, the appellant was entitled to a charge on self-defense.

Appellant asks this Court to sustain point of error seven and reverse and remand for a new trial.

POINT OF ERROR EIGHT

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO EXAMINE THE JURY CONCERNING THE READING OF NEWSPAPER ACCOUNTS OF THE TRIAL DURING THE GUILT/INNOCENCE STAGE OF TRIAL.

## ARGUMENT AND AUTHORITIES

During the guilt/innocence stage of trial defense counsel requested permission to question the jurors individually as to whether they had heard or read newspaper reports concerning the trial. Counsel pointed out that both local newspapers, <u>The Houston Post</u> and <u>The Houston Chronicle</u> ran articles concerning the instant case, reciting certain facts brought out during trial. Also pointed out, was that one article stated that an extraneous offense, the July 8, 1988 robbery of the Kindred Spirits, had been eliminated from the appellant's confession (SF IV, [Book 30] p. 737).

Defense Counsel pointed out that the articles contained evidence not brought before the jury during trial and that he had observed several jurors reading the newspapers. Counsel therefore requested that either the Court or Defense Counsel be allowed to inquire to the jury whether they had read the articles (SF IV, [Book 30], 738).

The District Attorney objected to either Counsel or the Court

inquiring and strenuously objected to Counsel inquiring (SF IV, [Book 30], p. 739). Defense counsel placed into evidence one newspaper article containing the comments previously referred to by Counsel (SF IV, [Book 30], p. 740).

The trial court denied the defense's request to inquire of the jury whether they had read the articles (SF IV, [Book 30], p. 740).

Appellant was denied due process as guaranteed by the 14th amendment of the United States Constitution when the trial court denied his request. While it can be presumed that the members of the jury followed the trial court instructions concerning not reading newspaper articles, the presumption is rebuttable. The only means of appellant determining whether the jurors had not followed the trial court's instruction, was to question them either individually or collectively.

In Barrington v. State, 594 S.W.2d 88 (Tex. Crim. App. 1980), the trial court allowed the defendant to question the jurors concerning their reading of newspaper articles concerning the trial. The Court, quoting Broussard v. State, 594 S.W.2d 90 (Tex. Crim. App. 1974), stated that while the better practice is that the jury be instructed not to listen to or view accounts of the trial, error is reversible only when the accused is injured or prejudiced. Id. at 90.

In this case, the appellant was harmed in that he was denied due process when the trial court would not allow him to question the jurors about the newspaper articles. Appellant could only speculate as to the harm caused by the jurors reading the articles.

33

Appellant asks this court to find that the trial court erred in failing to allow counsel to question the jurors concerning their reading of the newspaper articles

Appellant asks this court to sustain point of error eight and reverse and remand for a new trial.

## POINT OF ERROR NINE

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS THE IDENTIFICATION OF THE APPELLANT BY WITNESS OVERHOLT.

### ARGUMENT AND AUTHORITIES

Appellant filed a Motion to Suppress Identification asking the court to suppress the identification because the identification procedure utilized was so impermissibly suggestive that it induced the witness to identify the Defendant (TR pp. 191-192).

Larry Richard Overholt testified during the State's case-in-chief that when he observed the robbery and murder occur, he saw that the robber was wearing a blue baseball cap, sunglasses, and maybe or maybe not the robber had a mustache. When he went to the line-up, the witness could not identify the robber. The witness decided that the robber was either number two or number three in the line-up, but he was not sure (SF I, [Book 33], pp. 146-140).

The witness was then allowed to view a video of the line-up to determine whether he could identify either number two or three as the robber. He observed the video two or three times before he finally identified the appellant as the robber (SF I, [Book 33], pp. 151-154).

The trial court made findings of facts and conclusions of law regarding the pre-trial line-up suggestiveness (TR 425). The court concluded that from a totality of the circumstances the line-up was not so necessarily suggestive and conducive to irreparable mistaken

identification as to amount to a denial of due process of law (TR 428).

In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the court held that the evidence would be admissible if possessed certain "features of reliability", that "reliability is the linchpin in determining the admissibility of identification testimony." Id., 432 U.S. at 110, 114; 97 S.Ct. at 2251, 2253.

Texas courts follow the factors set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) in admitting challenged identification procedures. They include: (1) the witness' opportunity to view the defendant during the commission of the offense; (2) the witness' degree of detention; (3) the accuracy of the prior description of the accused; (4) the level of certainty of the identification; and (5) the amount of time between the crime and the confrontation. Munquia v. State, 603 S.W.2d 876 (Tex. Crim. App. 1980).

Appellant submits that the identification procedures in this instance were unreliable. The witness testified that he had observed the robber wearing a baseball cap. Therefore, he could not see his hairline, nor hair, but simply the sides of the hair protruding from under the baseball cap. Furthermore, the robber was wearing dark glasses, so he could not see his eyes. Additionally, there were no scars or other marks by which he could identify the robber.

During the actual line-up, the witness narrowed down the

36

identification between two members of the line-up. Afterwards, he was allowed to view a video tape of the line-up three times before he could make a positive identification. It is especially to this procedure in which the appellant questions, falling under the fourth factor set out in <u>Neil v. Biggers</u>, that is, the level of certainty of the identification. Because the witness was so uncertain in his identification, it should have been suppressed. Appellant asks this court to find that the identification procedures tainted the witness' in-court identification and therefore, should have been suppressed.

Appellant asks this court to sustain point of error nine and reverse and remand for a new trial.

## POINT OF ERROR TEN

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO ALLOW THE JURY TO ANSWER THE VERDICT SHEET IN A GENERAL RATHER THAN SPECIFIC MANNER.

## ARGUMENT AND AUTHORITIES

At the conclusion of the guilt/innocence phase of trial, appellant objected to the form of the verdict sheet in that it required a general verdict. He asked the Court to prepare the verdict sheet wherein each specific paragraph of the indictment would be addressed by the answer of the jury's verdict, that is, "We, the jury, find the Defendant guilty of Paragraph One or not and Paragraph Two or not." The trial court denied appellant's request (SF IV, [Book 36], p. 866.

In the instant case, the appellant is charged with capital murder which contains two paragraphs, one paragraph alleging capital murder by causing the death of a peace officer and one paragraph alleging capital murder by causing the death of the complainant while in the course of committing and attempting to commit robbery (TR. 10). The indictment states in pertinent part that the appellant:

> did then and there unlawfully intentionally and knowingly cause the death of ELSTON HOWARD, hereafter styled the Complainant, a peace officer in the lawful discharge of an official duty, by shooting the Complainant with a deadly weapon, namely, a firearm, knowing at the time the Complainant was a peace officer.

> It is further presented that in Harris County,

Texas, ROBERT MITCHELL JENNINGS, hereafter styled the Defendant, heretofore on or about July 19, 1988, did then and there unlawfully while in the course of committing and attempting to commit the ROBBERY of LARRY OVERHOLT, intentionally cause the death of ELSTON HOWARD, hereafter styled the Complainant, by shooting the Complainant with a deadly weapon, namely, a firearm.

(TR p. 10). The verdict sheet in this case states the following regarding the guilt or innocence of the appellant:

'We, the Jury, find the defendant, Robert Mitchell Jennings, not guilty.'

_____
Foreperson of the Jury

'We, the Jury, find the defendant, Robert Mitchell Jennings, guilty of capital murder, as charged in the indictment.'

_____
Foreperson of the Jury

'We, the Jury, find the defendant, Robert Mitchell Jennings, guilty of murder.'

_____
Foreperson of the Jury

(TR, p. 469). Because the verdict sheet allowed the jury three choices, the jury charge should have allowed for a separate finding of guilt for each paragraph. By allowing the jury to return a general finding of guilt, the trial court erred, thus depriving appellant his Fourteenth Amendment right to due process.

Appellant moved for an instructed verdict based on insufficiency of the evidence to prove that the appellant knew the complainant was a peace officer. The motion for instructed verdict was denied. However, the request shows that appellant had serious doubt that the evidence was indeed sufficient. Had the jury been

instructed to find guilt on each paragraph, appellant could be certain that the jury found this evidence insufficient.

Appellant also based his motion for instructed verdict on insufficiency of the evidence to prove that the murder was committed during the course of a robbery. Once again, the request shows that appellant had serious doubt that the evidence was indeed sufficient. And once again, appellant was denied due process that the jury found this evidence sufficient.

Texas Code of Criminal Procedure Annotated, art. 21.24 (Vernon Supp. 1991) provides:

> (a) Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offense arise of the same criminal episode, as defined in Chapter 3 of the Penal Code.
>
> (b) A count may contain as many separate paragraphs charging the same offense as necessary, but no paragraph may charge more than one offense.
>
> (c) A count is sufficient if any one of its paragraphs is sufficient. An indictment, information, or complaint is sufficient if any of its counts is sufficient.

Texas Code of Criminal Procedure Annotated, art. 37.07, section 1(c) requires a finding of guilty or not guilty in a separate verdict as to each count or offense submitted to the jury.

The Fifth Amendment of the United States Constitution provides that "...No person...shall be deprived of life, liberty, or property without due process of law." The Fourteenth Amendment of the United States Constitution makes this provisions applicable to the individual states. The trial court, in denying appellant's

request, thus deprived him of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.

Appellant asks this court to find that he was denied his constitutional right to due process when the trial court denied his request that the verdict sheet reflects that the jury considered each specific paragraph of the indictment.

Appellant asks this court to sustain point of error ten and reverse and remand for a new trial.

## POINT OF ERROR ELEVEN

THE TRIAL COURT ERRED IN DENYING APPELLANT'S REQUEST TO INCLUDE AN INSTRUCTION THAT THE APPELLANT'S ALCOHOL ABUSE COULD BE CONSIDERED AS A MITIGATING FACT AS TO PUNISHMENT.

### ARGUMENT AND AUTHORITIES

Appellant requested that the trial court include in its charge a statement that evidence of the Defendant's alcohol abuse at the time was a mitigating fact as to punishment and that such mitigating evidence must be considered by the jury. The court denied appellant's motion (SF I [Book 39], pp. 201-202).

The evidence of alcohol abuse was presented to the jury by means of the introduction of the appellant's confession, which stated that the appellant and a companion had been drinking on the night of the murder.

In Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973, 990 (1978) the Court held that, "The Eighth and Fourteenth Amendments require that the sentences...not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." As a result, the appellant should have been granted his requested jury instruction.

Appellant is aware of this Court's decision in Ex Parte Ellis, 810 S.W.2d 208 (Tex. Crim. App. 1991), whereby the Court concluded that the mitigating evidence did not rise to the level of 'Penry evidence' and no additional instruction was necessary for the jury to consider and give effect to the evidence. In Ellis the defendant introduced evidence of drug abuse, addition, and his intoxication at the time of the offense, but the trial court refused to give an additonal instruction.

Appellant is also aware of this Court's decision in Ex Parte Rogers, 819 S.W.2d 533 (Tex. Crim. App. 1991) in which this Court held that voluntary intoxication has no mitigating significance beyond the scope of the special issues. However, appellant asks this Court to adopt the dissenting view of Justice Clinton in that opinion. Justice Clinton points out that in Bell v. Ohio, 438 U.S.637, 98 S.Ct.2977, 57 L.Ed.2d 1010, the Court reversed the defendant's conviction based on the exculsion of evidence that the defendant had allegedly used mescaline on the night of the offense. He cites Lockett v. Ohio, 438 U.S.586 (1978), the companion case to Bell and states that both were adopted by a majority of the Supreme Court in Eddings v. Oklahoma, 455 U.S.104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). Justice Clinton
reasons that the Court's reasoning in Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 9234, 106 L.Ed.2d 256 (1989) concerning mental retardation, also has application in the context of intoxication.

In the instant case, appellant requested an instruction concerning alcohol abuse. As pointed out earlier, this evidence

43

was before the jury by way of the appellant's written confession. The trial court denied appellant's request and in so doing, harmed the appellant by withholding necessary instructions to the jury in their considerations of deciding punishment.

Appellant asks this Court to find that the trial court erred in denying appellant's request for instruction.

Appellant asks this Court to sustain point of error eleven and reverse and remand for a new trial.

POINT OF ERROR TWELVE

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR MISTRIAL IN THAT DURING VOIR DIRE JURORS WERE NOT QUESTIONED REGARDING WHETHER THEY WOULD BE ABLE TO USE THE REASONABLE MORAL RESPONSE IN ASSESSING THE DEATH PENALTY.

ARGUMENT AND AUTHORITIES

During the guilt/innocence stage of trial, on July 12, 1989, defense counsel urged a motion for mistrial. The motion was based on Penry v. Lynaugh, 492 U.S.302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), decided on June 26, 1989, approximately two weeks prior to the motion and that jury selection in this case had occurred prior to that decision (SF I [Book 39], pp. 69, 70).

The motion pointed out that the Penry decision held that the jury was deprived of applying the reasonable moral response in assessing the death penalty. Counsel urged that in this case, because jury selection occurred prior to the decision in Penry, appellant was not allowed to depend on the Penry decision to question jurors as to the reasonable moral response. The trial court denied appellant's motion for mistrial (SF I [Book 39], pp. 69-70).

In Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954 (1978), the Supreme Court held that the sentencer must not be precluded from

considering any mitigating evidence in the punishment phase of a capital murder case.

In _Eddings v. Oklahoma_, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) the Court held that the jury may not be precluded from considering mitigating evidence relevant to the jury's deliberations in punishment in a capital murder case.

In _Skipper v. South Carolina_, 106 S.Ct. 1669 (1986), the Court stated:

> There is no disputing that this Court's decision in _Eddings_ requires that in capital cases 'the sentencer...not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' (Citations omitted). Equally clear is the corollary rule that the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'...These rules are now well established, and the State does not question them.

The trial court has discretion in controlling the voir dire examination of prospective jurors. _Allridge v. State_, 762 S.W.2d 146 (Tex. Crim. App. 1988). However, this discretion is not limitless. _Smith v. State_, 703 S.W.2d 641 (Tex. Crim. App. 1985). An appellate court can review a trial court's decision to limit voir dire to determine whether the trial court abused its discretion in controlling the voir dire. _Smith_, 703 S.W.2d at 643. In _Smith_ the court reversed the defendant's conviction of murder when it found that the trial court limited the voir dire of the defendant's counsel. The court outlined the procedure an appellant must follow to show that the trial court abused its discretion:

> ...to show an abuse of discretion, a defendant must

> demonstrate that the question he sought to ask was
> proper. If the question was proper and the defendant
> could not intelligently exercise his peremptory
> challenges without the information gained from an answer.
>
> A question is proper if it seeks to discover a
> juror's views on an issue applicable to the case.
> (Citations omitted).

Smith, 703 at 642. In Smith, the defendant's sole defense was that

of insanity. Defense counsel sought to question the prospective

jurors concerning several insanity questions, but was prevented

from asking those questions by the trial court. This Court found

that the trial court abused its discretion in not allowing defense

counsel to ask the questions.

In the instant case, the question concerning whether a

prospective juror could consider mitigating evidence demonstrating

a reasonable moral response, was a proper question to ask. It was

a proper question seeking to discover prospective juror's view

applicable to this case. By denying defense counsel the

opportunity to question jurors, the appellant was deprived of

intelligently exercising his peremptory challenges.

Because the jury voir dire occurred prior to the Penry

decision, but trial began afterwards, and appellant requested

questioning the jury before the conclusion of trial, appellant

should have had his motion for mistrial granted. Appellant asks

this court to sustain point of error twelve and remand for a new

trial.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Appellant asks this Court to find the evidence insufficient to support the conviction, reverse and enter an order of acquittal. In the alternative, Appellant asks this Court to find that his conviction be reversed and remanded for a new trial, or reversed and remanded for a new hearing on punishment. Lastly, without foregoing any of the above, the appellant asks this court to reverse his punishment of death, and reform the punishment to life imprisonment.

Respectfully submitted,

Connie B. Williams
1314 Texas Ave., Suite 1710
Houston, Texas 77002
(713) 225-3700
TBA #21521500

ATTORNEY FOR THE APPELLANT
ROBERT MITCHELL JENNINGS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing appellant's brief was delivered to the Harris County District Attorney's Office on this the ___27th___ day of ___February___, 1992.

_____
Connie B. Williams