UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ROBERT MITCHELL JENNINGS,
                    *Petitioner*,

            *v.*

LORIE DAVIS, Director,
Texas Department of Criminal
Justice, Correctional Institutions
Division
                    *Respondent*.

§
§
§
§
§
§
§

No. 4:09-cv-00219


**Capital Case**

MOTION FOR RELIEF FROM JUDGMENT


EXECUTION DATE SET FOR
JANUARY 30, 2019

EDWARD MALLETT
Mallett Saper, LLP
4306 Yoakum Blvd., Suite 400
Houston, Texas 77006
Tel.: (713) 236-1900
Fax: (713) 228-0321
edward@msblawyers.com

JOSHUA FREIMAN
Assistant Federal Public Defender
TIVON SCHARDL
Chief, Capital Habeas Unit
Office of the Federal Public Defender
For the Western District of Texas
504 Lavaca Street, Suite 960
Austin, TX 78701
Tel.: 512-916-5025
Fax: 512-916-5035
joshua_freiman@fd.org

January 22, 2019

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................. 1

RELEVANT FACTS AND PROCEDURAL HISTORY ................................................. 3

   A.    Mr. Jennings's capital sentencing. ....................................................................... 3

       1.    *Penry v. Lynaugh* is decided, and trial counsel fail to notice. ................. 3

       2.    Trial counsel conduct no mitigation investigation, present no mitigation witness, and present only one witness with respect to the future-dangerousness special issue. ... 7

       3.    Trial counsel requests the court submit the District Attorney's supplemental "nullification" instruction. .................................................................. 9

   B.    Initial state court review. ................................................................................... 12

   C.    Federal habeas and subsequent post-conviction proceedings. ......................... 15

   D.    Federal habeas counsel's conflict of interest and the appointment of conflict-free counsel. .......................................................................................... 17

ARGUMENT .................................................................................................................. 19

   A.    Rule 60(b) permits this Court to reopen the judgment to do justice on a showing of extraordinary circumstances. .............................................................................. 24

   B.    Mr. Jennings's defaulted claim of ineffective assistance of trial counsel is extraordinary and substantial; denying relief from the judgment will prevent these merits from being heard ...................................................................................... 25

       1.    Counsel performed unreasonably. ........................................................... 28

       2.    Mr. Jennings was prejudiced by counsel's failures. ............................... 33

   C.    This is an exceptional case because most defendants sentenced to death by juries under the nullification instruction have already received relief, but not Mr. Jennings. ...... 35

   D.    State habeas counsel's ineffectiveness warrants reopening based on the decisions in *Martinez* and *Trevino*. ..................................................................................... 39

       1.    *Martinez* and *Trevino* make an important change in law that allow Mr. Jennings to raise his defaulted ineffectiveness claim. .................................................... 40

       2.    State habeas counsel was ineffective in initial state habeas proceedings. ...... 41

   E.    Federal habeas counsel's conceded and harmful conflict of interest in the habeas proceedings is extraordinary. .............................................................................. 43

   F.    This motion attacks a defect in the integrity of federal habeas proceedings and so is not a successive petition in disguise. ....................................................... 48

   G.    Since the appointment of conflict-free counsel, Mr. Jennings has diligently moved to seek relief. ...................................................................................................... 49

   H.    The State's interest in finality is diminished where the State fails to alert the courts to the defect in the federal proceedings. ............................................................. 52

CONCLUSION .............................................................................................................. 54

i

# TABLE OF AUTHORITIES

## CASES

*(Terry) Williams v. Taylor*, 529 U.S. 362 (2000)............................................................28

*Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007)..................................................16, 32

*Ackermann v. United States*, 340 U.S. 193 (1950) .........................................................25

*Ames v. Miller*, 184 F. Supp. 2d 566 (N.D. Tex. 2002) .................................................44

*Brewer v. Quarterman*, 550 U.S. 286 (2007)...................................................................16

*Buck v. Davis*, 137 S. Ct. 759 (2017)........................................................................passim

*Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216 (11th Cir. 2017)........................................51

*Canales v. Stephens*, 765 F.3d 551 (5th Cir. 2014).........................................................42

*Clark v. Davis*, 850 F.3d 770 (5th Cir. 2017) ...............................................49, 50, 52

*Coleman v. Thompson*, 501 U.S. 722 (1991)............................................................40, 47

*Cox v. Horn*, 757 F.3d 113 (3d Cir. 2014)...............................................................41, 42

*Cuyler v. Sullivan*, 446 U.S. 335 (1980)..........................................................................31

*Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993)..............................................................53

*Diaz v. Stephens*, 731 F.3d 370 (5th Cir. 2013) .............................................................41

*Ex parte Jennings*, No. AP-75-806 & AP-75,807,
    2008 WL 5049911 (Tex. Crim. App. 2008). ....................................................8, 15

*Ex parte Kunkle*, 852 S.W.2d 499 (Tex. Crim. App. 1993)...........................................15

*Ex parte Martinez*, 233 S.W.3d 319 (Tex. Crim. App. 2007)........................................33

*Ex parte Moreno*, 245 S.W.3d 419 (Tex. Crim. App. 2008) .........................................38

*Furman v. Georgia*, 408 U.S. 238 (1972) .......................................................................36

*Gonzalez v. Crosby*, 545 U.S. 524 (2005)........................................................25, 26, 49

*Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453 (5th Cir. 1992) .........................26

*Hinton v. Alabama*, 571 U.S. 263 (2014) .......................................................................28

*Holland v. Florida*, 560 U.S. 631 (2010).................................................................47, 51

*Jamison v. Lockhart*, 975 F.2d 1377 (8th Cir. 1992) .....................................................51

*Jennings v. State*, No. AP-70,911 (Tex. Crim. App. 1993) ...........................................12

*Jennings v. Stephens*, 135 S. Ct. 793 (2015)...................................................................17

*Jennings v. Stephens*, 537 F. App'x 326 (5th Cir. 2013).........................................17, 35

*Jennings v. Stephens*, 617 F. App'x 315 (5th Cir. 2015)................................................17

*Jurek v. Texas*, 428 U.S. 262 (1976)................................................................................36

*Kimmelman v. Morrison*, 477 U.S. 365 (1986)..........................................................29, 30

*Klapprott v. United States*, 335 U.S. 601 (1949) ............................................................24

*Lankford v. Arave*, 468 F.3d 578 (9th Cir. 2006).........................................................29

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)..............25, 44, 47, 48

*Lockett v. Anderson*, 230 F.3d 695 (5th Cir. 2000)..............................................30

*Maples v. Thomas*, 565 U.S. 266 (2012) ................................................46, 51

*Marderosian v. Shamshak*, 170 F.R.D. 335 (D. Mass. 1997)........................44

*Martinez v. Ryan*, 566 U.S. 1 (2012).............................................. passim

*McFarland v. Scott*, 512 U.S. 849 (1994)......................................47, 48

*Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015)...........................18, 46

*Ogan v. Cockrell*, 297 F.3d 349 (5th Cir. 2002) ..................................33

*Penry v. Lynaugh* (*Penry I*), 492 U.S. 302 (1989).......................... passim

*Penry v. Johnson* (*Penry II*), 532 U.S. 782 (2001).......................... passim

*Sealed Appellee v. Sealed Appellant*, 900 F.3d 663 (5th Cir. 2018)........24, 54

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. Unit A 1981)............. 24, 25, 53

*Smith v. Texas*, 550 U.S. 297 (2007) ..................................................... 16

*Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015) ..................................18, 46

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................. 28, 34, 41

*Tennard v. Dretke*, 542 U.S. 274 (2004) ..............................................33

*Thompson v. Dallas City Attorney's Office*, No. 17-10952,
    __ F.3d __ (5th Cir. Jan. 11, 2019) ..............................................33

*Trevino v. Davis*, 829 F.3d 328 (5th Cir. 2016)......................................42

*Trevino v. Thaler*, 569 U.S. 413 (2013)............................... 18, 19, 40, 41

*Wiggins v. Smith*, 539 U.S. 510 (2003) ..............................................43

*Williams v. Davis*, 192 F. Supp. 3d 732 (S.D. Tex. 2016)....................34, 35

*Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010)...........................24

*Woodson v. North Carolina*, 428 U.S. 280 (1976)...................................1

## STATUTES

28 U.S.C. § 2244 ........................................................................49

28 U.S.C. § 2254(d)......................................................................7

Act of May 17, 1991, 72d Leg., R.S., ch. 838, § 1,
    1991 Tex.Gen.Laws 2898, 2900 ..............................................6

Tex. Code Crim. Proc. art. 11.071....................................14, 42

Tex. Code Crim. Proc. art. 37.071(b) ..........................................4

Tex. Code Crim. Proc. art. 37.071(e)(1) ( (Vernon's 1991) ......................6

Tex. Gov't Code Ann. § 78.054(b)..............................................48

## RULES

Fed. R. Civ. P. 60(b) ..........................................................passim

Fed. R. Civ. P. 60(c)(1)....................................................50

## INTRODUCTION

Petitioner Robert Mitchell Jennings moves this Court for relief from his judgment because meritorious claims of trial counsel's ineffective assistance received no review on the merits in any court, and that fact seriously affects the integrity of the prior proceedings in this case.  This Court may reopen judgment and review that claim *de novo*. Fed. R. Civ. P. 60(b).

Mr. Jennings's claim goes to the heart of the bargain the Supreme Court struck when it permitted the imposition of the death penalty after 1976. States may only execute a person if the jury has been empowered to give a reasoned moral response to evidence of that person's life and character. *See Penry v Lynaugh* (*Penry I*), 492 U.S. 302, 316 (1989) ("[I]n capital cases the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (plurality)).

In June 1989, the Supreme Court declared that under Texas law, jurors could not give effect to significant evidence that might mitigate the punishment and authorize a sentence less than death. *Penry I*, 492 U.S. at 328.

This "constitutionally indispensable part of the process of inflicting death" was absent from Mr. Jennings's trial.  That is because trial counsel, ignorant of the law, did not ensure that Mr. Jennings's jury would be capable of giving effect to his evidence in mitigation. Instead, the defense accepted an illogical instruction drafted by the District Attorney and submitted it as the defendant's own request. But for this decision, and trial counsel's other fatal error—conducting no mitigation investigation and presenting no evidence in mitigation—there is a reasonable probability Mr. Jennings would not have been sentenced to death.

Dozens of other prisoners received relief when courts considered and adjudicated this same error. Mr. Jennings is one of the very few sentenced to death via this unconstitutional scheme who has not received a resentencing.

This claim is before the Court for equally extraordinary reasons. State habeas counsel's recent confessed omission of valid claims prevented this Court and the Texas courts from deciding the claim. When the Supreme Court decided *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court gave authority for district courts to hear defaulted claims that arose from state habeas counsel's ineffectiveness.

The attorney representing Mr. Jennings in this Court ignored the conflict of interest and failed to evaluate and criticize his own performance in state habeas. Respondent knew that defense counsel was laboring under a potential conflict of

2

interest, but ignored it, rather than raising it in any court. But for those omissions, this Court would have considered, *de novo*, the serious error of counsel that led to an unjust sentence.

These failures seriously affect the fairness and integrity of the previous federal proceedings and permit this court to grant relief.

## RELEVANT FACTS AND PROCEDURAL HISTORY

### A.    Mr. Jennings's capital sentencing.

In 1988, Robert Jennings was charged with capital murder for the shooting death of police officer Elston Howard. Mr. Jennings was represented at trial by appointed counsel, Connie Williams and Grant Hardeway.

### 1.    *Penry v. Lynaugh* is decided, and trial counsel fail to notice.

Trial counsel conducted Mr. Jennings's capital sentencing ignorant of a major change to Texas capital sentencing law.

Nine days before testimony began at Mr. Jennings's trial—and after all the jurors had been questioned and selected—the Supreme Court decided *Penry v. Lynaugh*, 492 U.S. 302 (June 26, 1989). In a groundbreaking decision, *Penry* found for the first time that the Texas capital sentencing statute failed to comply with the Eighth Amendment in some cases because it did not allow jurors to impose a

3

sentence directly related to the personal culpability of the defendant. *See id.* at 322-328.

The sentencing scheme at issue in *Penry*—and in place at the time of Mr. Jennings's trial—required that the jury answer three "special issues":

> (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
>
> (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
>
> (3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.

Tex. Code Crim. Proc. art. 37.071(b) (Vernon 1981 and Supp.1989).

Johnny Paul Penry was convicted of brutally raping, beating, and stabbing to death Pamela Carpenter in Livingston, Texas. In his case, the Court held that the special issues did not inform the jury that it could fully consider and give effect to his mitigating evidence of childhood abuse and intellectual disability in imposing its sentence. *See* 492 U.S. at 328.  Under Mr. Penry's circumstances, the jury needed an additional instruction that would "clearly direct" the jury to "consider" mitigation evidence and give effect to it. *Id.* at 323.

The *Penry I* decision was long anticipated. The Supreme Court took the case a year earlier, *Penry v. Lynaugh*, 487 U.S. 1283 (June 30, 1988) (mem.), and the decision to take the case was front-page news in Houston.[1]  High Court to Rule on Executions of Mentally Retarded, Hous. Chronicle, July 1, 1988, at A1.[2] During the intervening year, capital defense counsel in Texas were strategically planning for a possible ruling in Penry's favor. <<Declaration of Robert McGlasson>>; *see also* Convicted Killer Holds Hope of New Appeal, Hous. Chronicle, Sept. 25, 1988, C1 (quoting McGlasson on application of *Penry* cert. grant to other cases).

*Penry I* was handed down at the end of the Supreme Court's Term, and, as anticipated, received front-page attention in *The Houston Chronicle. See* Ruling Might Spur Changes, Hous. Chronicle, June 27, 1989 at 1. The headlines on that day and following days spoke to the monumental importance of the decision for Texas capital trials: **Ruling Might Spur Changes** (June 27)**;** *Penry* **Ruling May Revise**

---

[1] Mr. Jennings has attached as Exhibit A, a collection of Houston Chronicle news stories on the *Penry* case. All articles referenced in this section are included in that exhibit.

[2] *See also* Retarded Death Row Inmate Hopes New Hearing will Save his Life, Hous. Chronicle, July 7, 1988, at 1. The case received other coverage as when State legislators filed bills attempting to pre-empt a ruling favorable to Penry on intellectual disability (then "mental retardation"). *E.g.,* Ban on Executions of Retarded Urged, Hous. Chronicle, Dec. 18, 1988, at C1. *See also* Supreme Court Stays Execution of Convicted Texas Killer, Hous. Chronicle, Sept. 15, 1988, at A (regarding stay entered pending disposition of *Penry*).

**Death Penalty** (June 27 inset)**;** *Penry* **Ruling May Open Legal Doors for Others on Death Row** (July 3). An article noted that the decision might give rise to changes to the statute. *See* Penry Ruling Might Revise Death Penalty, Hous. Chronicle, June 27, 1989 at 11.[3]

Yet Mr. Jennings's trial counsel were ignorant of this major change to Texas capital sentencing law. The first time it came to their attention was when District Attorney John B. Holmes raised it, in the middle of the capital sentencing hearing on July 12, 1989. SHCR 441 (Supp. Affidavit of Connie Williams, Feb. 23, 2007).

As a result, counsel could not and did not move to reopen *voir dire* to determine that the jurors selected were "*Penry* qualified"—that is, whether they could

---

[3] The Texas Legislature addressed *Penry* at the soonest possible juncture: the next legislative session in 1991. Act of May 17, 1991, 72d Leg., R.S., ch. 838, § 1, 1991 Tex.Gen.Laws 2898, 2900. A new *Penry*-compliant instruction went into effect September 1, 1991:

> Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Tex. Code Crim. Proc. art. 37.071(e)(1) ( (Vernon's 1991). In essentially the same form, that mitigation instruction is still in effect today. *See* Tex Code Crim. Proc. art. 37.071(e)(1) (modifying "life imprisonment" to "life imprisonment without parole").

give effect to mitigating evidence that might exceed the scope of the special issues.

Nor did counsel move for a timely mistrial. *See* 39 RR 69-70. Even then counsel's

belated objection revealed his limited ability to state *Penry*'s holding:

> Mr. Williams:    Your Honor, before the jury comes in, the *Penry* decision was decided two weeks ago. We would like to make a Motion for Mistrial. It raised a situation where the jurors should be allowed to respond in the punishment – uh portion of a trial to a moral response, Your Honor, to the – in applying the – uh – to use the reasonable moral response in assessing the death penalty....

39 RR 69.

> **2.    Trial counsel conduct no mitigation investigation, present no mitigation witness, and present only one witness with respect to the future-dangerousness special issue.[4]**

In preparation for the punishment stage of Mr. Jennings's trial, trial counsel

did not "fully appreciate the concept of 'mitigation evidence.'" SHCR 40. So

counsel made almost no attempt to investigate any circumstances that might

persuade a juror to deem Mr. Jennings worthy of a sentence less than death. *Id.*

---

[4] As addressed in the Argument *infra*, Mr. Jennings is not seeking to relitigate, or provide new evidence in support of, the ineffective assistance of trial counsel claim for counsel's failure to conduct a reasonable mitigation investigation that has been conclusively denied by the Fifth Circuit under 28 U.S.C. § 2254(d). He raises a different claim for relief, based on an independent deficiency of trial counsel.

Trial counsel spoke with Mr. Jennings, his mother Flora Jennings, and a
Harris County jail chaplain whom Mr. Jennings had met with infrequently while
detained before trial. SHCR 41. Based on this extremely limited preparation,
counsel proposed to have the jail chaplain and Mr. Jennings himself testify. During
the defendant's punishment stage evidence, counsel sought to present Mr. Jennings
protected by an order prohibiting cross-examination about the facts of the case. 39
RR 196-200. The prosecution opposed and the court denied. Those facts included
his childhood neglect at the hands of a mother addicted to drugs. 39 RR 197.

When the court denied that tardy effort to limit testimony, counsel presented
no witnesses who raised any of these mitigating facts. The defense rested without
presenting a shred of mitigation evidence. Instead, the jury heard from the jail
chaplain, who testified that he had met Mr. Jennings in jail, saw him a few times a
week, and believed that he was not "incorrigible." 39 RR 187-89. The chaplain's
evidence had only the "most tenuous" connection to mitigation, and merely had an
"ameliorating effect" with respect to the second special issue, future dangerousness.
*Ex parte Jennings*, No. AP-75-806 & AP-75,807, 2008 WL 5049911, at *8 (Tex. Crim.
App. 2008).

The jury also heard Mr. Jennings's tape-recorded statement, taken while Mr.
Jennings was a patient at Ben Taub Hospital, receiving treatment for a gunshot

wound to his hand. 39 RR 162-63. In that statement, Mr. Jennings admitted his guilt and stated that he was "real upset" because he shot someone and did not know whether that person was dead or alive; that he was remorseful about what happened; that he wished he could "take it all back"; and that he would "face whatever punishment [he had] coming." He also cried during portions of the interview. State's Exhibit 22a.

###   3.   Trial counsel requests the court submit the District Attorney's supplemental "nullification" instruction.

On July 12, 1989, a little over two weeks after *Penry I*, the District Attorney handed counsel a copy of the decision and a supplemental instruction drafted by the District Attorney's chief of appeals. Mr. Holmes informed counsel that he believed the new instruction "was an appropriate response to the *Penry* mandate." SHCR 441; SHCR 29. Mr. Williams unreasonably accepted the offer: because he did not have time to research the law, he would rely on the prosecution's assurance, and would give the trial court the supplemental jury instruction as if it were his own. *Id.*

At the conclusion of the case, trial counsel knew they "needed to give *something* to the jury," but, having failed to research the law independently or speak with their colleagues in the defense bar who had been litigating strategies based on the Supreme Court litigation for months, they did not know what that something

was. *Id.* (emphasis added). So counsel "asked the Court to include the nullification instruction supplied by Mr. Holmes." *Id.* The Court accepted the instruction:

> When you deliberate about the questions posed in the Special Issues, you are to consider mitigating circumstances and factors, if any, supported by the evidence presented in both phases of trial. A mitigating circumstance may be any aspect of the Defendant's character and record or circumstances of the crime which you believe makes a sentence of death inappropriate in this case. If you find that there are any mitigating circumstances, you must decide how much weight they deserve and give them effect when you answer the Special Issues. If you determine that, in consideration of this evidence, [ ] a life sentence rather than a death sentence, is an appropriate response to the personal moral culpability of the Defendant, you are instructed to answer the Special Issue under consideration "No."

1 CR at 478.

In closing argument, District Attorney Holmes argued that the jury should do the impossible: simultaneously give effect to this instruction, but also follow the law they swore to follow at voir dire (which did not discuss a potential nullification instruction): "I hope that you have the courage and the convictions that you showed at the time you were selected as a member of the jury to vote what the evidence clearly shows." 39 RR 227. This admonition is materially the same as the prosecutor's admonition in Penry's first trial. *See Penry I*, 492 U.S. at 325–26 (prosecutor: "You've all taken an oath to follow the law and you know what the law is.... In answering these questions based on the evidence and following the law, and that's all that I asked you to do, is to go out and look at the evidence.").

10

Assistant District Attorney George Lambright argued that Mr. Jennings's evident remorse should not be credited when making the decision whether he should be sentenced to death. 39 RR 246-47.

Trial counsel Williams stated that he could not "quarrel with" the jurors' imposition of the death penalty.[5] "But if you can, I ask you to find that mitigation to answer one of those issues 'No.'" 39 RR 239-40.

The jury answered the three statutory special issues in the affirmative. CR 480-82. The trial court imposed a death sentence based on the answers to the special issues, CR 487-89. Mr. Jennings was sentenced to death.

Johnny Paul Penry was retried in 1990, the year after Mr. Jennings's trial. *See Penry v. Johnson* (*Penry II*), 532 U.S. 782, 788 (2001). Penry's second jury received a nullification instruction similar to the one Mr. Jennings's defense counsel laundered for the District Attorney. *Id.* at 789-90. But Mr. Penry's attorney recognized that the instruction failed to provide "the key under *Penry I* ... that the jury be able to 'consider and *give effect to* a defendant's mitigating evidence in imposing sentence.'" *Id.* at 797 (quoting, with added emphasis and omitted alteration, *Penry I*, 492 U.S. at 319)).

---

[5] *Cf. McCoy v. Louisiana*, 138 S. Ct. 1500 (2018) (defendant's choice, not counsel's, not to admit guilt in an attempt to secure a sentence less than death).

The Supreme Court found,

> Our opinion in *Penry I* provided sufficient guidance as to how the trial court might have drafted the jury charge for Penry's second sentencing hearing to comply with our mandate. We specifically indicated that our concerns would have been alleviated by a jury instruction defining the term "deliberately" in the first special issue "in a way that would clearly direct the jury to consider fully Penry's mitigating evidence as it bears on his personal culpability." 492 U.S., at 323. The trial court surely could have drafted an instruction to this effect. *Indeed, Penry offered two definitions of "deliberately" that the trial court refused to give.* See Tr. of Oral Arg. 12, 14-15.

*Penry II*, 532 U.S. at 802-03 (emphasis added). The nullification instruction's failure to satisfy *Penry I* was so evident that the Supreme Court found the state court's conclusion to the contrary "objectively unreasonable." *Id.* at 804.

### B.   Initial state court review.

Appellate counsel, who also was trial counsel, did not challenge the instruction on appeal and could not allege their own ineffectiveness in requesting the instruction. The Court of Criminal Appeals affirmed the death sentence in 1993. *Jennings v. State*, No. AP-70,911 (Tex. Crim. App. 1993) (unpublished).

Attorney Randy Schaffer was appointed to represent Mr. Jennings after his direct appeal had concluded. Texas law required Mr. Schaffer to raise all available extra-record claims for relief in a single habeas application. He did not.

In the initial habeas application filed in September 1996, Mr. Jennings raised one claim of ineffective assistance of trial counsel at the penalty phase based on four distinct "deficiencies in performance." *See* SHCR 21-34.[6]

In a section that concluded that Mr. Jennings had not received "the benefit of *Penry*," the application asserted—without evidentiary support—that District Attorney Holmes had personally provided trial counsel the nullification instruction and that the instruction was "drafted by Calvin Hartmann, Chief of the Appellate Division of the Harris County District Attorney's Office." SHCR 29 & n.16.

Mr. Schaffer had learned of those facts from a conversation with Mr. Holmes himself. *See* Sept. 13, 1996 Memo re Randy Schaffer Meeting with Johnny Holmes, Exhibit B. Mr. Schaffer would obtain a supplemental affidavit from Mr. Williams attesting to the same facts *over ten years later*, in February 2007. *See* SHCR 441.

In June 2001, Mr. Jennings filed a supplement to his application with an additional claim that the trial court's submission of the nullification instruction

---

[6] The application raised four deficiencies:
1. failure to discover and present mitigating evidence of Mr. Jennings's mental impairment;
2. failure to present evidence of applicant's disadvantaged background;
3. failure to move to reopen the voir dire examination or to move for a mistrial when *Penry v. Lynaugh* was decided after completion of the voir dire examination but before commencement of the testimony;
4. arguing during summation that he could not quarrel with the death sentence.

13

violated the Eighth Amendment. *See* SHCR 59-64. The new filing again raised the disturbing circumstances by which counsel received the nullification instruction from the district attorney. SHCR at 59-60. But once again, the application did not allege that *trial counsel*—as opposed to the trial court—had been deficient for failing to question the nullification instruction.

At the close of initial briefing before the trial court, state habeas counsel did not request that the court hold an evidentiary hearing, and none was held. *Cf.* Tex. Code Crim. Proc. art. 11.071 §§ 8, 9 (Vernon's 1995) (mandating a hearing if there are "controverted previously unresolved factual issues"). The state habeas court denied relief on Mr. Jennings's claims in January 2007, by signing the District Attorney's proposed findings of fact and conclusions of law. SHCR 410-28.

The state habeas court's findings are merely advisory, until the Court of Criminal Appeals adopts them. *See* Tex. Code Crim. Proc. art. 11.071. Mr. Jennings objected to the state habeas court's decision. Among his objections, Mr. Jennings requested—for the first time since 1996—a hearing to develop evidence regarding the circumstances of counsel requesting the nullification instruction. *See* SHCR 437.

When the Court of Criminal Appeals set the matter for additional briefing on the ineffectiveness claims and the *Penry* issue, counsel floated a new theory of ineffectiveness.  In supplemental briefing, in a footnote near the end of his pleading,

14

Mr. Jennings made brief reference to a combination of counsel's deficiencies for failing to "introduce[] mitigating evidence of his mental impairment and disadvantaged background" *and* failing to "object[] to the nullification instruction" which would have led to a different outcome. Applicant's Brief, at 31 n.25.

Relying on a 1993 precedent, the CCA concluded that Mr. Jennings's *Penry* claim failed, because it was reviewable based only on the record, and the record contained no evidence that would have been beyond the scope of the special issues. *Ex parte Jennings*, 2008 WL 5049911, at *8, n.21 (citing *Ex parte Kunkle*, 852 S.W.2d 499, 504 (Tex. Crim. App. 1993) ("we shall not consider mitigating evidence not presented or proffered at trial in determining the merits of a *Penry* claim.")).

### C.   Federal habeas and subsequent post-conviction proceedings.

Two months after the Court of Criminal Appeals denied Mr. Jennings's habeas application, Mr. Schaffer moved for appointment as Mr. Jennings's federal habeas counsel and filed the petition for habeas corpus in January 2009. ECF No. 1 (Petition). The petition purported to raise one ground for relief alleging ineffective assistance of counsel at the punishment stage.

In addition, the petition raised the claim that "[h]ad counsel introduced mitigating evidence of petitioner's mental impairment and disadvantaged background and thereafter objected to the nullification instruction, an appellate

15

court would have reversed the death sentence." Petition at 33-34 (citing *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007); *Brewer v. Quarterman*, 550 U.S. 286 (2007); and *Smith v. Texas*, 550 U.S. 297 (2007)).

This Court granted relief on that claim. *Jennings v. Thaler*, No. 4:09-cv-219, 2012 WL 1440387 (S.D. Tex. Apr. 23, 2012), *rev'd sub nom. Jennings v. Stephens*, 537 F. App'x 326 (5th Cir. 2013), *remanded*, 135 S. Ct. 793 (2015), *and aff'd*, 617 F. App'x 315 (5th Cir. 2015). This Court held that trial counsel's overall decision to present no witnesses to explain Mr. Jennings's life was not reasonable and the state court had unreasonably applied clearly established law: "whatever damage counsel may have feared from cross examination of Jennings or Mrs. Jennings's hostility toward her son is far outweighed by the damage caused by presenting no evidence at all of Jennings's background, i.e., giving the jury no reason not to impose a death sentence." *Id.* at *4. But, this Court found Mr. Jennings's claim about counsel's failure with respect to the nullification instruction unexhausted and procedurally barred. *Id.* at *7.

The Fifth Circuit reversed the grant of relief in July 2013. *Jennings v. Stephens*, 537 F. App'x 326 (5th Cir. 2013). The court found it "[n[otabl[e]" that "Jennings' attorneys requested [the nullification] instruction and did not object to it as inadequate;" the court agreed with this Court that the claim regarding *Penry* was

16

defaulted. *Id.* at 336-37. It found that Mr. Jennings had developed the factual basis for the claim in state court, and noted that a different *Penry* issue had been raised and adjudicated in state court. *Id.*

The Supreme Court reversed and remanded the Fifth Circuit's decision for failure to consider all issues on appeal. *Jennings v. Stephens*, 135 S. Ct. 793 (2015). Initial federal habeas proceedings finally came to a close in 2015, when the Fifth Circuit rejected the remaining issue on remand and again denied relief. *Jennings v. Stephens*, 617 F. App'x 315 (5th Cir. 2015).

### D.   Federal habeas counsel's conflict of interest and the appointment of conflict-free counsel.

Five weeks before this Court entered its Memorandum and Order granting Mr. Jennings's ineffectiveness claim, the Supreme Court held that federal habeas petitioners could raise a procedurally defaulted ineffective-assistance-of-trial-counsel claim, if counsel at the initial collateral-review stage at which the claim had to be raised first were themselves ineffective in failing to present the claim. *Martinez v. Ryan*, 566 U.S. 1, 17 (Mar. 20, 2012).[7]

---

[7] The State of Texas filed a brief as *amicus curiae* urging a ruling in favor of the respondent in *Martinez*. 2011 WL 4072899.

Two months before the Court of Appeals ruled on Mr. Jennings's appeal, in May 2013, the Supreme Court removed all doubt: *Martinez* applied to Texas post-conviction cases. *Trevino v. Thaler*, 569 U.S. 413, 429 (May 28, 2013).

Under the *Martinez* rule, Mr. Jennings's federal habeas counsel, who had also served as state habeas counsel, labored under a potential conflict of interest. *See Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015); *Mendoza v. Stephens*, 783 F.3d 203, 211 (5th Cir. 2015) (Owen, J., concurring).

At the end of Mr. Jennings's initial habeas proceedings, federal habeas counsel represented Mr. Jennings in subsequent state habeas litigation, seeking to vindicate Mr. Jennings's right to retrial due to the trial court's submission of the defective nullification instruction and raising other issues. The CCA dismissed the subsequent litigation and denied a suggestion to reconsider an earlier application. *Ex parte Jennings*, Nos. WR-67,208-03 and WR-67,208-04 (Tex. Crim. App. May 16, 2018); *Ex parte Jennings*, Nos. WR-67,208-02 and WR-67,208-03, 2018 WL 4472744 (Tex. Crim. App. Sept. 19, 2018).  Mr. Schaffer filed a petition for a writ of *certiorari* and an application for a stay of execution in the Supreme Court on November 20, 2018. Petition for Writ of Certiorari, *Jennings v. Texas*, No. 18-6848 (U.S.), which remains pending.

State/federal habeas counsel did not raise his conflict of interest until September 20, 2018. ECF No. 24. Over a month earlier, Mr. Jennings had received an execution date for January 30, 2019. Mr. Schaffer argued that Mr. Jennings was entitled to new counsel for federal review of the state habeas counsel's performance under *Martinez* and *Trevino*. *Id.* Counsel identified two areas in which he believed he might have been ineffective in state habeas proceedings for failing to investigate and raise claims of trial counsel's ineffectiveness. *Id.* at 4-10.

Over the State's opposition, this Court appointed conflict-free counsel Edward Mallett on October 23, 2018.  ECF No. 27. Mr. Mallett moved this court for co-counsel the Federal Public Defender for the Western District of Texas, Capital Habeas Unit (Federal Defender), *see* ECF No. 28, because he could not "effectively carry out his mission under the Court's order without [] substantial assistance." ECF No. 30. The State again opposed. On November 21, this Court granted the motion, appointing the Federal Defender. ECF No. 31.

## ARGUMENT

"Extraordinary" cases are extraordinary in their own, unique ways. The circumstances that entitle a petitioner to Rule 60(b)(6) relief—that is, that make the case extraordinary—are not easily reduced to rules and precedents. The law entrusts

19

the determination to this Court's broad, equitable judgment, so that it might do justice.

Mr. Jennings respectfully submits that his case is extraordinary. The following factors make his case the rare outlier, eligible for reopening and review.

1.    *The uniquely damaging effect of a trial counsel who was ignorant of the constitutional law of capital sentencing, consulted only with opposing counsel, conducted negligible mitigation investigation, and did the prosecution's unconstitutional bidding in giving the jury a flawed, confusing instruction.* Mr. Jennings's trial counsel was admittedly ignorant of the law of capital sentencing and abdicated his adversarial role when he permitted the State to pass its nullification instruction as a "defense" request. The State then capitalized on counsel's error by admonishing the jurors to follow the special issues alone. This unthinking, uncritical reliance on the prosecution's work-product prevented the jury from giving a reasoned moral response to Mr. Jennings's remorse and life. *Cf. Buck v. Davis*, 137 S. Ct. 759, 779 (2017) (noting that defense counsel's injection of an error into punishment trial was extraordinary circumstance under Rule 60(b) where Texas conceded the same error in other cases).

This error compounded the already severe problems with counsel's mitigation investigation. This Court found that trial counsel's failures in conducting an adequate mitigation investigation left the jury with "no reason not to impose a death

20

sentence." *Jennings v. Thaler*, No. 4:09-cv-219, 2012 WL 1440387 at *4 (S.D. Tex. Apr. 23, 2012). But for these errors, there is a near certainty that Mr. Jennings's sentence would have been overturned and a reasonable probability that a juror would have had both the evidence and the instructional vehicle necessary to spare Mr. Jennings's life.

2.      *This is an exceptional case because Mr. Jennings has failed to receive Eighth Amendment relief – not because of the merits of the claim, but due to the timing of the developments in the law, and the ineffectiveness of prior counsel.* Mr. Jennings's case is rare in part because the class of similarly situated defendants was small, many of them received relief already, and these cases are unlikely to arise again. *Cf. Buck*, 137 S. Ct. at 778-79 (noting that state denied relief to Mr. Buck that was made available to similarly situated petitioners). By 1991, ten years *before Penry II*, Texas mandated a mitigation instruction to jurors that complied with *Penry I*. Only defendants tried in the two-year period between June 1989, when *Penry I* was decided, and September 1991, when the new statutory instruction took effect, could be in Mr. Jennings's situation. Further, the unique combination of counsel's errors—presenting negligible mitigating evidence and requesting the nullification instruction that would block full consideration of any mitigation—has thus far doomed Mr. Jennings's attempt to rectify his case under Texas's post-*Penry* law.

21

3. *The significant change in law in* Martinez *&* Trevino *allows for* de novo *review of this claim.* Mr. Jennings's defaulted claim of ineffectiveness was barred from review in federal court in 2009, when it was raised. By 2012, that had changed: at the moment this Court granted relief on a separate issue of trial counsel's ineffectiveness, this Court could have reviewed the claim. This change in law is only now being invoked in Mr. Jennings's case due to federal habeas counsel's conflict of interest. Now, this court has the opportunity to review this claim *de novo. Cf. Buck*, 137 S. Ct. at 779-80 (noting change in law wrought by *Martinez* was a "significant element" in availability of relief under Rule 60(b)).

4. *The unreasonable failures of state habeas counsel to raise this issue has prevented review of this claim for the last 22 years.* State habeas counsel was aware of trial counsel's unreasoned decision to launder the prosecution's nullification instruction – yet failed to plead a claim about trial counsel's malfeasance.  Instead, post-conviction counsel mentioned the issue in passing in a footnote in a 2007 state court brief, and did not raise the claim of counsel's ineffectiveness in federal habeas until 2009.  There was no strategic or valid reason for state habeas counsel not raising this issue when he first learned of it.

5. *Federal habeas counsel's conflict of interest infected federal habeas proceedings and was not raised by conflicted counsel until the eve of execution.* Counsel's conflict of

interest disabled him from working on Mr. Jennings's behalf to secure review of his meritorious, defaulted claim. Mr. Jennings has not received even one round of federal review with counsel capable of representing all his interests. This fundamental defect in the federal adjudication alone warrants reopening.

6.     *Conflict-free counsel appointed less than 90 days before Mr. Jennings's execution have timely sought relief from the judgment.* Conflict-free counsel have exercised extraordinary diligence in familiarizing themselves with the facts and law of Mr. Jennings's case. They have raised this motion less than three months after their appointment, i.e., a "reasonable time" from the moment the grounds could be raised.

7.     *The state's interest in finality is diminished.* Even weighed against the State's interest in finality in its judgments, these extraordinary facts and circumstances favor reopening the judgment. The State's interest in finality is entitled to less weight here due to two equitably relevant circumstances: (1) the State introduced the nullification instruction—albeit through defense counsel's unreasonable assistance—and no reasonable lawyer could have failed to see that the instruction did not satisfy *Penry II. Cf. Penry II*, 532 U.S. at 804; (2) the State was aware that Mr. Schaffer defaulted a trial ineffectiveness claim, the State participated in the litigation in *Martinez* and thereby admitted its interest in the outcome of that

23

case, the State had a duty to raise a disqualifying conflict that could impair the integrity of these proceedings, *Sealed Appellee v. Sealed Appellant*, 900 F.3d 663, 672 (5th Cir. 2018), and the State sat silent.

### A.    Rule 60(b) permits this Court to reopen the judgment to do justice on a showing of extraordinary circumstances.

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case." *Williams v. Thaler*, 602 F.3d 291, 311 (5th Cir. 2010) (internal quotation marks and citation omitted); *Klapprott v. United States*, 335 U.S. 601, 615 (1949) (Rule 60(b) "vests power in courts . . . to enable them to vacate judgments whenever such action is appropriate to accomplish justice."). The rule recognizes that, while finality of judgments is of crucial importance, "the justice function of the courts demands that it must yield, in appropriate circumstances, to the equities of the particular case in order that the judgment might reflect the true merits of the cause." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. Unit A 1981). This is no less true in habeas cases. *See Buck*, 137 S. Ct. at 778-80 (granting Rule 60(b)(6) relief to capital habeas petitioner).

The exercise of the power is reserved for cases that present "extraordinary circumstances." *Ackermann v. United States*, 340 U.S. 193, 199 (1950). To determine whether "extraordinary circumstances" warrant relief under Rule 60(b)(6), courts may consider a variety of factors. *Buck*, 137 S. Ct. at 778. These include "the risk of

injustice to the parties and the risk of undermining the public's confidence in the judicial process." *Id.* (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (internal quotation marks omitted)). Other relevant, but non-exclusive factors identified by the Fifth Circuit and potentially relevant here include "whether the motion was made within a reasonable time," "whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense," and "whether there are intervening equities that would make it inequitable to grant relief." *Seven Elves*, 635 F.2d at 402. The court conducts a case-by-case inquiry, requiring careful assessment of the particular equities of each case. *See Gonzalez v. Crosby*, 545 U.S. 524, 540 (2005) (Stevens, J. dissenting) (observing "the equitable, often fact-intensive nature of the Rule 60(b) inquiry").

A district court's discretion when considering Rule 60(b)(6) motions is "especially broad," *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992), and subject only to "limited and deferential appellate review," *Gonzalez*, 545 U.S. at 535.

### B.    Mr. Jennings's defaulted claim of ineffective assistance of trial counsel is extraordinary and substantial; denying relief from the judgment will prevent these merits from being heard.

The substantiality of the never-before-adjudicated constitutional claim weighs strongly in favor of granting relief to re-open judgment. The claim that this Court

has thus far been precluded from addressing—and could now address *de novo*—is a serious and meritorious claim of trial counsel's ineffectiveness.

The Court does not need to *resolve* this merits inquiry through this motion. Indeed, it cannot do so. *Gonzalez*, 545 U.S. at 532-33. It is enough that this claim is substantial, has some merit, and deserves development and review after an evidentiary hearing. *Buck*, 137 S. Ct. at 779-80.

Defense counsel's actions at the punishment phase of trial forfeited any chance Mr. Jennings could receive a constitutionally defensible sentence. Counsel acted as a dupe for the District Attorney, laundering the prosecution's illogical, unethical, and unconstitutional nullification instruction, *Penry II*, 532 U.S. at 799, and requesting it as their own. Moreover, they did so without any independent attempt to determine whether it was in their client's interest at trial, whether it complied with *Penry I* (a decision trial counsel either hadn't read or hadn't reasonably understood), or whether basic prudence required that the State must proffer the instruction and bear any risk of it being found defective on appeal.

As lead trial counsel Connie Williams stated in a 2007 affidavit,

- Counsel "did not realize that [*Penry*] had been decided until we [were] in the punishment stage of Mr. Jenning's [sic] trial."

- Counsel learned of the case on July 12, 1989 when the District Attorney Holmes, gave them a copy of the *Penry* decision and a supplemental instruction written by the prosecution.

- Counsel stated that "there was no time to research *Penry* for the purpose of developing and constructing our own *Penry* instruction"

- Counsel "needed to give *something* to the jury" so counsel "asked the Court to include the nullification instruction supplied by Mr. Holmes."

SHCR 441.

The prosecution then capitalized on the juror's confusion in closing argument. In *voir dire*, the seated jurors were questioned on the special issues alone and told that the law required them to follow those instructions. Then, in their jury charge, they were informed that there was an additional instruction—something that jurors could interpret as telling them to give a false answer the special issues. *See* 1 CR 478. This put the jury in the untenable position of having to follow the new instruction, which in turn asked the jury to ignore the special issues they swore to follow based on an unguided process of "nullfication."

The prosecution recognized and exploited the inconsistency by reminding the jurors of their obligation to follow the law they swore to follow at *voir dire*: "I hope that you have the courage and the convictions that you showed at the time you were

27

selected as a member of the jury to vote what the evidence clearly shows." 39 RR

227. And the prosecution downplayed evidence of remorse. 39 RR 246-47.

### 1.    Counsel performed unreasonably.

Reviewed through the lens of basic strategic considerations and the clearly

established applicable constitutional principles, counsel's conduct in requesting the

instruction was undoubtedly unreasonable. *See Strickland v. Washington*, 466 U.S. 668

(1984).

"An attorney's ignorance of a point of law that is fundamental to his case

combined with his failure to perform basic research on that point is a quintessential

example of unreasonable performance under *Strickland.*" *Hinton v. Alabama*, 571

U.S. 263, 274 (2014); *see*, e.g., (*Terry*) *Williams v. Taylor*, 529 U.S. 362, 395 (2000)

(finding deficient performance where counsel "failed to conduct an investigation

that would have uncovered extensive records [that could be used for death penalty

mitigation purposes], not because of any strategic calculation but because they

incorrectly thought that state law barred access to such records"); *Kimmelman v.*

*Morrison*, 477 U.S. 365, 385 (1986) (finding deficient performance where counsel

failed to conduct pretrial discovery and that failure "was not based on 'strategy,' but

on counsel's mistaken belie[f] that the State was obliged to take the initiative and

turn over all of its inculpatory evidence to the defense").

For example, in *Lankford v. Arave*, 468 F.3d 578 (9th Cir. 2006), *cert. denied*, 552 U.S. 943 (2007), the court, per Judge Bybee, granted habeas relief based upon trial counsel's submission of jury instructions that erroneously misstated the state law as to accomplice testimony. 468 F.3d at 583-84. Trial counsel performed good-faith research to learn the law, but selected an accomplice testimony jury instruction that conflicted with Idaho state law. *Id.* at 584-85. The circuit court found that "[c]ounsel's errors with the jury instructions were not a strategic decision to forego one defense in favor of another. They were the result of a misunderstanding of the law." *Id.* at 584.

Here, counsel's decision to request the supplemental nullification instruction was made in ignorance of a fundamental point of law—*Penry I*. Counsel's assertion that he did not have time to consider *Penry*, SHCR 441, is belied by evidence that defense lawyers were making strategic use of grant of *certiorari* eight months before the merits decision issued.

Even after Mr. Jennings's counsel learned of *Penry* on the unreasonably late date of July 12, counsel nevertheless did no further legal research to understand the basic holding of that case. *See* SHCR 29; SHCR 441.

Worse yet, even crediting trial counsel's assertion that he lacked time to prepare, his complaint only shows his inability to make an informed strategic decision.

29

*Lockett v. Anderson*, 230 F.3d 695, 715 (5th Cir. 2000) (holding "assertion of a 'strategic decision' must be rejected because no *informed* decision was made."). Counsel's statements evidence uncertainty about the right course of action. Rather than require the State to bear the risk of that uncertainty, defense counsel adopted the prosecutor's instruction as his own, not for any strategic reason, but because the jury had to be given "*something.*" SHCR 441. Nothing explains trial counsel's decision to make Mr. Jennings bear the risk that the proffered instruction would be defective. It is axiomatic that defense counsel had a duty to "take steps necessary to make a clear and complete record for potential review," including "requesting or objecting to jury instructions." American Bar Association, Criminal Justice Standards, Defense Function, Std. 4-1.5.

"The Sixth Amendment mandates that the State bear the risk of constitutionally deficient assistance of counsel." *Kimmelman*, 477 U.S. at 379 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance.'") (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980)). So too, under the equitable principles that apply in this Rule-60(b) context, the State cannot rely on finality because to do so inverts the Constitution's allocation of risk.

Common sense, informed by any reasonable lawyer's understanding of jury nullification, the Eighth Amendment, and *Penry* were enough to put reasonable counsel on notice—at a minimum—that the nullification instruction was questionable. Any reasonable lawyer could have seen that the tension between the nullification instruction and the jurors' oaths was untenable, and would lead to unconstitutional results. The special issues and nullification instruction were certainly inadequate to give effect to the mitigating evidence that might have been introduced by trial counsel after even a minimally adequate mitigation investigation. The State, not Mr. Jennings, should bear the risk of error.

A straightforward reading of *Penry* reveals that it required an instruction that would "*clearly direct*" consideration of, 492 U.S. at 323 (emphasis added), "provide a vehicle" for, *id.* at 324, or "give effect to," *id.* at 323, mitigating evidence of childhood abuse.

The instruction counsel submitted was not just plainly out of compliance with *Penry* because it failed to provide a "vehicle," *id.* at 324, for the "mitigating facts" counsel hoped to submit, *see* 39 RR 196-200. The instruction was internally ambiguous and was guaranteed to confuse the jurors about their ability to give Mr. Jennings a life sentence when doing so would require them to violate their oath as jurors.

31

The Supreme Court has held the Fifth Circuit and Texas Court of Criminal Appeals grossly misinterpreted what the Constitution required prior to the firm rebuke of *Penry II* (2001). *Penry v. Johnson* decided as a matter of law that no reasonable court could conclude that the identical nullification instruction given in Penry's second trial complied with the Eighth Amendment. *Penry II*, 532 U.S. at 804; *see also Abdul-Kabir v. Quarterman*, 550 U.S. 233, 263 (2007) ("Indeed, given that the resentencing [in *Penry II*] occurred after the enactment of AEDPA, we concluded (*contrary to the views of the Fifth Circuit*, which had denied *Penry* a COA) that the CCA's judgment affirming the death sentence was *objectively unreasonable*." (emphasis added)).

A finding of deficiency does not translate to a requirement that trial counsel be clairvoyant.[8] Numerous lawyers in trial counsel's position preserved proper

---

[8] *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002), held that counsel could not have acted unreasonably because the Fifth Circuit "consistently approved supplemental mitigating evidence instructions similar to the instruction given in this case."  But because *Penry II* held those approvals "objectively unreasonable," and the Circuit failed to address *Penry II*'s AEDPA-based holding, *Ogan*'s holding is not precedent. *See Thompson v. Dallas City Attorney's Office*, No. 17-10952, __ F.3d __ (5th Cir. Jan. 11, 2019) (published). *Ogan* was itself decided at a time when the Fifth Circuit held an "improper" view of what mitigation evidence was, which infected its application of *Penry*. *See Tennard v. Dretke*, 542 U.S. 274, 287 (2004) ("[T]he Fifth Circuit's screening test [for mitigation relevance] has no basis in our precedents....").

objections to the nullification instruction or sought a proper mitigation instruction.
At the October 1989 trial of Raymond Martinez in Harris County, counsel "made
various objections to [the nullification] instruction all of which the trial court
overruled."

> Within these objections, applicant claimed that "any charge relating
> to *Penry*" should be in the form of a separate "special issue" so that "the
> jury could consider mitigating evidence separate and apart from their
> consideration of the three [special] issues."

*Ex parte Martinez*, 233 S.W.3d 319, 321 (Tex. Crim. App. 2007). Mr. Martinez was
granted a new trial. The same was true for Guy Alexander (Harris County, 1989);
Michael Blue (Liberty County, June 1989); Carl Buntion (Harris County, 1989); and
Charles Hood (Collin County 1990). Obviously, Penry's lawyers did so the year after
Mr. Jennings's trial. *Penry II*, 532 U.S. at 802-03. All those defendants received relief
from their unconstitutional sentence. *See* Exhibit C (list of cases in which relief was
granted following *Penry II*).

### 2.   Mr. Jennings was prejudiced by counsel's failures.

Mr. Jennings can "show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been
different." *Strickland*, 466 U.S. at 694.

Had counsel presented any evidence in mitigation and had that court submitted the prosecution's nullification instruction as a prosecution request, there is a near-certainty that the sentence would have been overturned. The Supreme Court, Fifth Circuit, and Court of Criminal Appeals have granted relief in over 25 cases where mitigating evidence could not be adequately considered through the special issues or nullification instruction.

In addition, at the time counsel offered the instruction, following the close of evidence at the punishment phase, counsel should have known that the jury could not give independent mitigating value to the evidence of remorse found in the recorded confession that counsel argued to the jury in closing as mitigation. *See* 39 RR 232. In *Williams v. Davis*, 192 F. Supp. 3d 732 (S.D. Tex. 2016), Judge Nancy Atlas held that jurors could not give effect to evidence of remorse within the special issues, that this evidence was independently mitigating, and the CCA's decision to the contrary was unreasonable. *Id.* at 768-70.

The fact that the Court of Criminal Appeals denied an Eighth Amendment claim under *Penry* based solely on the limited evidence adduced at trial has no bearing on the question here.  As the Fifth Circuit recognized, Mr. Jennings's defaulted ineffectiveness claim is different: it is that the unreasonable request of the nullification instruction and "failure to offer mitigating evidence of his background

34

deprived him of an argument on appeal that the nullification instruction violated his Eighth and Fourteenth Amendment rights, which could have resulted in overturning his sentence on direct appeal or by a state or federal habeas court." *Jennings*, 537 F. App'x at 336-37. The CCA has not addressed that claim.

Trial counsel's *Penry* error in this case was harmful and there is at least a reasonable probability that Mr. Jennings would have received a new punishment trial, if not a life sentence, had the available mitigation evidence been presented and given effect. This is true notwithstanding the aggravating facts of Mr. Jennings's offense. *See* Exhibit D (collecting cases in which a defendant who murdered a law enforcement officer received a sentence of less than death).

C. **This is an exceptional case because most defendants sentenced to death by juries under the nullification instruction have already received relief, but not Mr. Jennings.**

Mr. Jennings's trial is a historical oddity, unlikely to repeat itself, and deserving of relief.

Of the dozens of States that created new death-penalty statutes after *Furman*,[9] only "[t]wo states—Texas and Oregon—enacted the same unusual statute, which did

---

[9] *Furman v. Georgia*, 408 U.S. 238, 239-40 (1972) (holding imposition and carrying out of the death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendment).

not directly invite jurors to consider mitigating evidence or ask them whether the defendant deserved to die." Carol Steiker & Jordan Steiker, *Courting Death: The Supreme Court and Capital Punishment* 124 (2016). The Supreme Court only upheld the Texas statute on its face on the assurance that jurors could consider and give effect to *all* mitigating evidence through the issues that the jury was required to answer: deliberateness, future dangerousness, and provocation. *Penry*, 492 U.S. at 316 (*Jurek v. Texas*, 428 U.S. 262 (1976), "reasoned that the statute's constitutionality 'turns on whether the enumerated questions allow consideration of particularized mitigating factors.'" (quoting *Jurek*, 428 U.S. at 272)).

The problem was that jurors could logically believe that someone should have their life spared because of, for example, difficult circumstances, cognitive impairments, or mental illness, and at the same time believe that the defendant would remain dangerous. *Penry I*, 492 U.S. at 324 (This evidence is "thus a two-edged sword: it may diminish his blameworthiness for his crime even as it indicates that there is a probability that he will be dangerous in the future. . . . The second special issue, therefore, did not provide a vehicle for the jury to give mitigating effect to Penry's evidence of mental retardation and childhood abuse."); *see id.* (quoting *Penry v. Lynaugh*, 832 F.2d 915, 925 (5th Cir. 1987) (Reavley, J.)). When the jurors could not give effect to mitigating evidence because it was not within the scope of

36

the special issues or because the special issues would treat the evidence as aggravating, not mitigating, the instructions the jury received violated the Eighth Amendment.

Mr. Jennings's trial occurred in the two-year period between the decision in *Penry* and the Texas Legislature's creation of a *Penry*-compliant mitigation instruction. Though other defendants were sentenced to die during that time, and many of those sentencing courts submitted a supplemental nullification instruction, dozens of defendants have received relief for that flawed instruction. *See* Exhibit C (cases with *Penry II* relief). That is because, in the mine run of cases, counsel objected to the instruction or at the very least did not request it, and presented at least some mitigation evidence. *See, e.g., supra* (citing cases in which objection was made); *Ex parte Moreno*, 245 S.W.3d 419, 423 (Tex. Crim. App. 2008) (granting relief on an unpreserved nullification instruction).

The supposed solution District Attorney Holmes offered trial counsel was no solution at all. As the Supreme Court later explained, it would be objectively unreasonable to think the supplemental nullification instruction used in Mr. Jennings's trial—and in Mr. Penry's retrial[10]—cured the constitutional problem

---

[10] Mr. Penry's nullification instruction differed only slightly in wording. *See Penry II*, 532 U.S. at 790 (quoting instruction).

37

identified in *Penry I*. *Penry II*, 532 U.S. at 804. The additional instruction is inherently confusing about the jurors' duties to answer questions truthfully. It either simply placed jurors in the same position of *Penry I* and so was "ineffective" or else created an analytical and ethical bind for jurors and so was "illogical." *Id.* at 804.

Mr. Jennings's nullification instruction, like the instruction in *Penry II*, produced an unreliable death sentence because jurors had no way to give effect to evidence of remorse or any other factor bearing on the appropriateness of a sentence of death that could not be given effect within the scope of the special issues. *Penry II*, 532 U.S. at 797. That jurors were only able to give effect to such factors by falsifying their answers to the special issues, placed jurors in a "logically and ethically impossible" situation, *id.* at 799: they were required to falsely answer the special issue if they initially intended to answer the issue "yes," but were required by the nullification instruction to answer "no" in order to give effect to mitigating evidence. This also added an element of arbitrariness to the procedures because each juror would resolve this tension differently. *See id.* at 800.

Unlike many cases involving a supplemental nullification instruction, Mr. Jennings has never been permitted to show that a minimally adequate mitigation investigation would have turned up compelling mitigation evidence of brain damage and a troubled childhood, *see* Petition 7-25, ECF No. 1, and that his jury would not

have been able to give full effect to that mitigation evidence under the instructions

they were given.[11] He has been barred from retrial because of his trial counsel's

double failure and his post-conviction counsel's trebling of the damage.

Mr. Jennings's case is the rare one in which his counsel's investigative and

instructional errors combined to prevent meaningful review of an unconstitutional

capital sentencing. *See Ex parte Jennings* at *8 (denying *Penry* claim because review

"limited to the evidence" from testimony of jail chaplain); *Ex parte Jennings*, (Tex.

Crim. App. May 16, 2018) (dismissing successor raising *Penry* issue again, now

including evidence of remorse from confession); *Ex parte Jennings*, No. WR-67,208-02

& WR-67,208-03 (Tex. Crim. App. Sept. 19, 2018) (denying subsequent application

to reconsider denied *Penry* issue).

### D.   State habeas counsel's ineffectiveness warrants reopening based on the decisions in *Martinez* and *Trevino*.

In 2009, when Mr. Jennings filed his federal petition, Mr. Jennings's

ineffective assistance of trial counsel claim regarding the nullification instruction

could not be adjudicated on the merits in federal court because it had not been

raised in state court. *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569

---

[11] Mr. Jennings relies on, and does not seek to alter or revisit, the record of mitigation that reasonable counsel could have presented, as recounted in his initial petition.

U.S. 413 (2013), made a "narrow" but very important exception to that rule. *Martinez*, *566* U.S. at 9. "*Martinez* sharply altered *Coleman's*[12] well-settled application of the procedural default bar and altered the law of every circuit. The rule adopted in *Martinez* was also important, crafted, as it was, to ensure that fundamental constitutional claims receive review by at least one court." *Cox v. Horn*, 757 F.3d 113, 124 (3d Cir. 2014).

> **1.** ***Martinez* and *Trevino* make an important change in law that allow Mr. Jennings to raise his defaulted ineffectiveness claim.**

*Martinez* and *Trevino* allowed petitioners *one* chance to have their claims of trial counsel's ineffectiveness reviewed on the merits if:

> (a) the default was caused by ineffective assistance of post-conviction counsel under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), or the absence of counsel;

> (b) in the initial-review collateral proceeding (i.e., the first collateral proceeding in which the claim could be heard); and

> (c) the underlying claim of trial counsel ineffectiveness is "substantial," meaning "the claim has some merit," analogous to the substantiality requirement for a certificate of appealability.

*Id.* at 13-14. *Trevino* clarified that this exception applied to Texas, where state habeas proceedings were the first "meaningful opportunity" to present a claim of trial counsel ineffectiveness. *See Trevino*, 569 U.S. at 428.

---

[12] *Coleman v. Thompson*, 501 U.S. 722 (1991).

This change in an important doctrine of federal habeas law may not be exceptional enough on its own; but it certainly may add to the overall reasons a court can grant Rule 60(b)(6) relief. *See Diaz v. Stephens*, 731 F.3d 370, 375 (5th Cir. 2013) (finding change in law because of *Martinez* & *Trevino* "not alone grounds for relief from a final judgment" but considering that change with other equitable factors, *see id.* at 376-79); *accord Cox*, 757 F.3d at 126 (granting Rule 60(b)(6) relief in light of decisional law along with other extraordinary circumstances).

Mr. Jennings is entitled to the benefit of those cases, which were decided before judgment was entered (*Martinez*) and before the Fifth Circuit reversed this Court's grant of habeas relief (*Trevino*).[13] Applying that standard, state habeas counsel was ineffective and Mr. Jennings now may raise his claim for relief.

### 2.    State habeas counsel was ineffective in initial state habeas proceedings.

State habeas counsel had a duty to "investigate expeditiously" all "factual and legal grounds for the filing of an application for a writ of habeas corpus." Tex. Code Crim. Proc. art. 11.071, § 3. Counsel is also held to the same standard of conduct as

---

[13] The State may assert that *Martinez* does not apply retroactively and would have to be applied retroactively here. *See Buck*, 137 S. Ct. at 780 (finding State waived retroactivity argument). This argument fails, however, because Mr. Jennings was entitled to the benefit of *Martinez* before judgment was entered in his favor by this Court.

constitutionally appointed counsel under *Strickland*. *See Martinez*, 566 U.S. at 14 (requiring ineffectiveness showing); *accord Trevino v. Davis*, 829 F.3d 328, 348 (5th Cir. 2016); *Canales v. Stephens*, 765 F.3d 551, 569 (5th Cir. 2014) (holding state habeas counsel's performance deficient).

State habeas counsel made an unreasonable decision not to raise a claim of trial counsel's ineffectiveness for requesting the nullification instruction. State habeas counsel learned of the extremely unusual circumstances of counsel's request for a supplemental nullification instruction from the Harris County District Attorney himself. *See* Exhibit B. State habeas counsel also argued that Mr. Jennings had been denied the "benefit of *Penry*" in the initial habeas application. SHCR 30. State habeas counsel thus knew of a potential, meritorious ground for raising counsel's ineffectiveness with respect to the *Penry* nullification instruction and lacked a strategic reason to raise the issue. Yet state habeas counsel inexplicably did not present the claim.

This unreasonable decision resulted in the default of Mr. Jennings's ineffectiveness claim that has "some merit." *See Martinez*, 566 U.S. at 14 (requiring showing of "some merit" to underlying ineffectiveness claim).

State/federal habeas counsel suggests that the issue was meritless at the time. *See* Mot. Conflict-Free Counsel at 6, ECF No. 24. This "post-hoc rationalization"

42

should be viewed with skepticism. *Wiggins v. Smith*, 539 U.S. 510, 526 (2003). State habeas counsel's conduct in the initial habeas proceeding and afterward belies any potential argument of a strategic decision: Counsel raised at least two other challenges based on trial counsel's failure to secure a trial that complied with *Penry*. Counsel then attempted to re-introduce the issue of counsel's ineffectiveness belatedly in a state appellate brief and in the federal habeas petition. At the very least, the question of state habeas counsel's ineffectiveness should be resolved (1) *after* reopening judgment; and (2) allowing for factual development and hearing on the question.

E.     **Federal habeas counsel's conceded and harmful conflict of interest in the habeas proceedings is extraordinary.**

Federal habeas counsel's conflict of interest undermines the integrity of federal proceedings and the public's confidence in the outcome. This alone provides extraordinary grounds for reopening judgment. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11, 868-69 (1988) (granting Rule 60(b)(6) relief from judgment based on judge's conflict of interest); *Ames v. Miller*, 184 F. Supp. 2d 566, 577 (N.D. Tex. 2002) (granting Rule 60(b)(6) relief from judgment based on plaintiff's attorney's conflict of interest alone); *Marderosian v. Shamshak*, 170 F.R.D. 335, 342 (D. Mass. 1997) (granting relief from judgment due to counsel's simultaneous representation of defendant police chief and defendant

43

municipality in 42 U.S.C. § 1983 suit); *cf. Buck*, 137 S. Ct. at 778 ("Relying on race to impose a criminal sanction 'poisons public confidence" in the judicial process.'" (citation omitted)).

Appointed federal habeas counsel Randy Schaffer failed to raise his apparent conflict of interest from 2012 onward. He could have raised his conflict at numerous discrete points in time:

- Following the Supreme Court's March 2012 decision in *Martinez* but before this Court's April 23, 2012 judgment granting relief on Mr. Jennings's *Wiggins* claim, by amending his pleading to allege cause to overcome any procedural default of an ineffectiveness claim and seek inquiry on his possible conflict;

- Following this Court's judgment, through the mechanism of Rule 59(e) to alert the court to a significant change in law and seek supplemental counsel or substitution. *See, e.g.*, Mot. Withdraw as Counsel, *Tabler v. Stephens*, No. 6:10-cv-34 (W.D. Tex. Mar. 29, 2012) (post-judgment motion to withdraw). This would have allowed for an independent review and may have allowed for a consolidated appeal of all ineffectiveness claims in the initial federal habeas proceedings.

44

- On appeal, both before and after the May 2013 decision in *Trevino.* Indeed, Mr. Jennings pressed the nullification issue—this time without mentioning trial counsel's ineffectiveness in requesting the instruction, Brief of Appellee at 45-47, *Jennings v. Thaler*, No. 12-70018 (5th Cir. Oct. 26, 2012). This was done by other petitioners on appeal at that time. *See, e.g.*, *Mendoza v. Stephens*, 783 F.3d 203, 203 (5th Cir. 2015) (granting motion for the appointment of new supplemental counsel and vacating and remanding case in part); *Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015) (same).

- On remand to the Fifth Circuit from the Supreme Court in the summer of 2015 *after* the Fifth Circuit had said in *Tabler*, *Mendoza*, and *Speer* that counsel in Mr. Schaffer's position had a conflict of interest.

- Any other time following the Fifth Circuit's decision on remand in July 2015, and before September 20, 2018. This includes time counsel elected to spend in state court pursuing other issues.

The State agrees that counsel had numerous opportunities to raise his conflict. *See* Opp. to Motion for Stay, ECF No. 38 at 25. The State, however, lays the blame on Mr. Jennings, a layperson without ready access to legal materials, whose counsel never disclosed his conflict of interest. *Id.*

45

But the State's blame-the-client view is wrong as a matter of law. A client is not to be charged with the acts or omissions of his agent-attorney when the agent labors under a conflict of interest. *See Maples v. Thomas*, 565 U.S. 266, 282-283 (2012). As the Supreme Court observed, "[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of the word." *Holland v. Florida*, 560 U.S. 631, 659 (2010) (Alito, J. concurring) (citing *Coleman*, 501 U.S. at 752-754 (relying on "well-settled principles of agency law" to determine whether attorney error was attributable to the client)). Federal habeas counsel's failure to disclose his conflict to this Court and Mr. Jennings has undermined Mr. Jennings's right to statutory counsel and called into question the fairness of the federal habeas proceedings. *See McFarland v. Scott*, 512 U.S. 849, 859 (1994) ("By providing indigent capital defendants with a mandatory right to qualified legal counsel in these proceedings, Congress has recognized that federal habeas corpus has a particularly important role to play in promoting fundamental fairness in the imposition of the death penalty.").

In *Liljeberg*, the Supreme Court granted Rule 60(b)(6) relief to a plaintiff whose case was decided by a federal district court judge with an "obvious conflict of interest." There, a federal district court judge had a fiduciary interest in the outcome

of litigation over which he presided. He served as a member of a university's board of trustees, while the university was involved in dealings with the plaintiff in the case. 486 U.S. at 852-56. The Court held that the judge had failed to disqualify himself under 28 U.S.C. § 455(a), *id.* at 861, and found that the statutory violation was "neither insubstantial nor excusable," *id.* at 867. The Court found these grounds "extraordinary" and granted relief from the judgment under Rule 60(b)(6).

The Supreme Court considered three factors "in determining whether a judgment should be vacated": (1) "the risk of injustice to the parties in the particular case;" (2) "the risk that the denial of relief will produce injustice in other cases;" and (3) "the risk of undermining the public's confidence in the judicial process." *Id.* at 864. Although the Court announced these principles in the context of judicial disqualification, they aid courts in determining when relief may be provided under Rule 60(b). *See Buck*, 137 S. Ct. at 778 (applying *Liljeberg* factors). This is especially true here, where court-appointed counsel labored under a conflict even prior to judgment. When appointed counsel harbor conflicts of interest that deprive the court of review of substantial claims of constitutional error, the federal courts

47

cannot play their important role in ensuring "fundamental fairness in the imposition of the death penalty." *McFarland*, 512 U.S. at 859.[14]

**F.    This motion attacks a defect in the integrity of federal habeas proceedings and so is not a successive petition in disguise.**

Mr. Jennings's request to reopen his judgment under Rule 60(b)(6) is a "true" Rule 60 motion, not a successive petition subject to the restrictions of 28 U.S.C. § 2244. Mr. Jennings "attacks not the substance of the federal court's resolution of a claim on the merits, but [a] defect in the integrity of the federal habeas proceeding," *Gonzalez*, 545 U.S. at 532—namely, his counsel's conflict of interest in federal habeas proceedings, which prevented this Court from reviewing Mr. Jennings's defaulted claim of trial counsel's ineffectiveness. *See Clark v. Davis*, 850 F.3d 770, 779-80 (5th Cir. 2017) ("To the extent that [petitioner's] Rule 60(b)(6) motion attacks not the substance of the federal court's resolution of the claim of the merits, but asserts that [federal habeas counsel] had a conflict of interest that resulted in a defect in the

---

[14] The number of these conflicts addressed through a Rule 60(b) motion are also likely to be vanishingly rare in the future. A single statewide defender office now represents a large majority of state capital post-conviction petitioners. *See* Office of Capital and Forensic Writs, Legislative Appropriations Request For Fiscal Years 2018 and 2019, http://www.ocfw.texas.gov/media/11422/ocfw_fy2018-2019_revised_lar.pdf.  And that office is barred by statute from appearing in federal court. *See* Tex. Gov't Code Ann. § 78.054(b). Other conflicts are likely to be resolved well before judgment is entered.

integrity of the proceedings, the motion is not an impermissible successive petition.").

To be clear, Mr. Jennings seeks to vindicate a claim already raised in the initial federal habeas petition based on facts already presented in state habeas. He does not seek to relitigate any previous claim on the merits or add evidence in support of any already-litigated claim.

### G.   Since the appointment of conflict-free counsel, Mr. Jennings has diligently moved to seek relief.

Conflict-free counsel have acted with extraordinary diligence to become familiar with the facts and law of Mr. Jennings's case and raised this motion within the "reasonable time" required by Rule 60. *See* Fed. R. Civ. P. 60(c)(1). Timeliness is an equitable determination made on the particular facts and circumstances of a case, including when the grounds for the motion could first be raised. *Clark*, 850 F.3d at 780. Even an untimely motion may be granted where "good cause can be shown" for any delay. *Id.* at 780 (quoting *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004)).

Mr. Jennings was only capable of raising this Rule 60(b) motion when conflict-free counsel was appointed to investigate federal habeas counsel's conflict of interest on October 23, 2018. Prior to that time, conflicted federal habeas counsel's ongoing representation of Mr. Jennings prevented him from raising the present motion. Since that time, Mr. Jennings's conflict-free counsel have worked diligently to

49

investigate, research, and develop any potential ineffectiveness claims that might be raised and the issues that would allow the court to hear those claims. Therefore, this Court should measure whether this motion has been filed in a reasonable time from the date of the appointment of conflict-free counsel, not the earliest possible date that Mr. Jennings's counsel could and should have raised the conflict.

Besides, good cause exists to excuse any delay by Mr. Jennings. Mr. Jennings is a prisoner with low intellectual functioning and limited access to legal materials. Respondent has pointed to no evidence that Mr. Jennings was apprised of his counsel's conflict. Where a conflict of interest severs counsel's agent-principal relationship to the client, courts have not hesitated to excuse even strict limitations periods or procedural defaults in habeas corpus. *See Holland*, 560 U.S. at 649 (recognizing equitable tolling for AEDPA's statute of limitations for gross attorney error); *Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1236 (11th Cir. 2017) (noting that "circumstances of . . . divided loyalty" have long qualified for equitable tolling, even before *Holland*). If conflicts of interest provide an equitable cause for tolling a mandatory statute of limitations period, it stands to reason that they must provide equitable cause for delay in filing a Rule 60(b) motion. *See Jamison v. Lockhart*, 975 F.2d 1377, 1380 (8th Cir.1992) (attorney conduct may provide cause to excuse a

50

state procedural default where, as a result of a conflict of interest, the attorney "ceased to be [petitioner's] agent"), *cited in Maples*, 565 U.S. at 281.

Respondent invokes *Clark* to claim that Mr. Jennings's filing is untimely. *See* ECF No. 25 at 6. For three reasons, *Clark* did not set a hard-and-fast rule that required filing within some time period of the decision in *Trevino*, as Respondent has previously intimated.

First, *Clark* narrowly affirmed a district court's determination that petitioner's motion was untimely on two alternate grounds. The court applied both (1) the issue-date of *Trevino* and (2) the date of appointment of conflict-free counsel as possible triggering dates for timely filing. *Clark*, 850 F.3d at 782. Because Clark file his Rule 60(b) more than a year after either date, the Court found Clark's motion untimely "[*u*]*sing either date.*" *Id.* (emphasis added). This Court may use the appointment of conflict-free counsel as the trigger for timely filing, and conclude that Mr. Jennings's filing within three months of new counsel's appointment is timely.

Second, *Clark* reaffirmed the equitable principle that even an unreasonable delay in filing may be excused for "good cause" on a case-by-case showing. *Id.* at 783. Therefore, this Court retains broad equitable discretion to identify "good cause" for a delay in filing.

Third, *Clark* appears to have rejected the petitioner's particular grounds for excusing delay—the client's lack of awareness of the conflict and the pendency of proceedings in state court—for reasons unique to that case. *Clark* noted that the petitioner himself had been present during a conference explicitly discussing the effect of *Martinez* and *Trevino* in state court. *Id.* at 783. Consequently, Clark could not argue that his counsel's conflict prevented him from learning of his grounds for a Rule 60(b) motion earlier. Nothing remotely similar occurred in Mr. Jennings's case. This Court may engage in an analysis of good cause specific to Mr. Jennings's case, as *Clark* acknowledges.

The bottom line is that "reasonable time" and "good cause" for delay should be interpreted equitably. Mr. Jennings has raised his Rule 60(b) argument within a reasonable time of the appointment of his conflict-free federal habeas counsel to the case and his conflicted counsel's continuing representation of Mr. Jennings from the decision in *Trevino* without disclosing his conflict of interest.

### H.  The State's interest in finality is diminished where the State fails to alert the courts to the defect in the federal proceedings.

There is a strong interest in respecting the finality of judgments. "But the whole purpose of Rule 60(b) is to make an exception to finality." *Buck*, 137 S. Ct. at 779. Public confidence in the rule of law can be enhanced, not diminished, by a

court's exercise of its "justice function," not just its rigid enforcement of finality. *Seven Elves*, 635 F.2d at 401.

Here, the State's interest in finality is diminished because of its contribution to the default and delay. *Cf. Buck*, 137 S. Ct. at 779 (finding "State's interest in finality deserves little weight" based on State's admission of error in similar cases). Just as "petitioners without clean hands—those who contribute to the excessive delay—will not be heard to complain of the delay they have caused," *Deters v. Collins*, 985 F.2d 789, 796 (5th Cir. 1993), the State should not be permitted to complain of delay they have helped to cause. The State gave trial counsel the fateful instruction. The State was responsible for the appointment of ineffective state habeas counsel under state law. The State was responsible for inexplicable delays in state habeas proceedings that lasted from 1993 until 2008. And in defending the interests of the Director, the State was a savvy opponent in federal court, well aware of the effect of *Martinez* & *Trevino* and its implications for federal habeas counsel's appointment.

The State was more than capable of drawing the federal courts' attention to federal habeas counsel's potential conflict of interest at numerous earlier points in time. The Fifth Circuit has even suggested that attorneys representing the state have an obligation to do so. *Sealed Appellee v. Sealed Appellant*, 900 F.3d 663, 672 (5th Cir. 2018) ("When an attorney discovers a *possible* ethical violation concerning a matter

53

before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention." (emphasis added)). On January 16, by conference of the parties, the State clarified its position on Mr. Schaffer's conflict, stating that it denies there is a *present* conflict because the State believes Mr. Jennings lacks a proper vehicle to raise his claims. But the State did nothing to alert the courts of a readily apparent issue with federal habeas counsel's representation at any earlier time when those claims could have been raised.

In these circumstances, the typically strong interest in finality must yield.

## CONCLUSION

For these extraordinary circumstances, the appropriate remedy is reopening judgment. This Court should stay Mr. Jennings's execution, by separate order.

Respectfully submitted,

/S/ Edward Mallett
EDWARD MALLETT
Texas State Bar No. 12863000
Federal Bar 442
Mallett Saper, LLP
4306 Yoakum Blvd., Suite 400
Houston, Texas 77006
Tel.: (713) 236-1900
Fax: (713) 228-0321
edward@msblawyers.com

/S/ Joshua Freiman

JOSHUA FREIMAN*

NY Bar No. 5353545

Assistant Federal Public Defender

TIVON SCHARDL

Supervising Assistant Federal Public Defender

Fla. Bar No. 73016

Federal Defender Office

Capital Habeas Unit

504 Lavaca Street, Suite 960

Austin, TX 78701

Tel.: 512-916-5025

Fax: 512-916-5035

joshua_freiman@fd.org

January 22, 2019

---

* Admitted *pro hac vice*.

55

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), counsel for Petitioner has conferred with Ellen Stewart-Klein, counsel for Respondent, and who is authorized to represent that Respondent opposes the relief sought in this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on the 22st day of January 2019, I electronically filed the foregoing Motion for Relief from Judgment with the Clerk of Court by using the CM/ECF system, which will send notification of such filing to the following:

Ellen Stewart-Klein
Katherine Hayes
Matthew Ottoway
Jefferson Clendenin
Assistant Attorneys General
300 W 15th St.
8th Floor
Austin, TX 78701
512-936-1400
Email: Ellen.Stewart-Klein@oag.texas.gov

/s/ Edward Mallett
Edward Mallett